GEORGE KNOP et al., Plaintiffs-Appellees, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION et al., Defendants-Appellants.

Fifth District    No. 80-431

Opinion filed June 9, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellants.

Nehrt, Sachtleben & Fisher, of Chester (David R. Smith and R. Jeffrey Kerkhover, of counsel), for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Following a hearing by the State Board of Pharmacy of the State of Illinois (hereinafter the Board), the Department of Registration and Education of the State of Illinois (hereinafter the Department) revoked respondent George Knop's license as a pharmacy apprentice and suspended respondent Mark Humphrey's license as a registered pharmacist. From the circuit court's subsequent reversal of that order the Department now appeals raising a single issue, whether the decision of the administrative agency was against the manifest weight of the evidence.

The charges made by the Department in this case arose out of an incident that occurred on August 2, 1977, in which a prescription for Mysoline, an anticonvulsant drug, was filled mistakenly with a strength of the drug five times more potent than that prescribed by the physician for his seven-year-old patient, Eric Polley. Late the next day the error was detected at the pharmacy by respondent Humphrey, whereupon respondent Knop took the correctly filled prescription to the Polley residence, offering his apologies and a refund, in exchange for the incorrectly filled prescription, to Loren Polley, the child's father. The Department alleged, *inter alia*, that respondent Knop had filled and dispensed the prescription to the child's mother, Charlotte Polley, without the supervision of a registered pharmacist. Respondent Humphrey was charged with permitting respondent Knop to dispense the drug without supervision.

Respondent Knop owns Orr Rexall Drugs, where the incident occurred and where he employs respondent Humphrey as the registered pharmacist. Respondent Knop received his license as a pharmacy apprentice in 1949. Respondent Humphrey received his license as a registered pharmacist in 1974. Respondent Knop testified that at no time during this period of 30 years had he once filled a prescription without the presence of a registered pharmacist.

Rule VIII of the Rules and Regulations Promulgated for the Administration of the Illinois Pharmacy Practice Act provides in part:

"It shall be a violation of these Rules and Regulations of this Act if a registrant willfully and/or knowingly:

(1) Permits, whether or not such registrant is the registered pharmacist in charge, the dispensing of a prescription medication to an ultimate consumer in the absence of a registered pharmacist, local registered pharmacist or registered assistant pharmacist.

(2) Permits, whether or not such registrant is the registered pharmacist in charge, the distribution of a prescription medication to an ultimate consumer without the availability of consultation with a registered pharmacist or registered assistant pharmacist. Said pharmacist must be physically present and on duty in the establishment."

Following the hearing, the Board made the following findings of fact:

"14. THAT the Department established by competent evidence, testimony and proof that Respondent Knop, as owner of Respondent Pharmacy, operated, conducted, and practiced pharmacy without the presence of a registered pharmacist on August 2, 1977.

15. THAT on August 22 [*sic*], 1977 Respondent Knop dispensed * * * prescription #366931 in error, substituting Mysoline 250 mg. for Mysoline 50 mg. to Ms. Charlotte Polley; further Respondent Knop was not wearing a badge identifying himself as a pharmacy apprentice; further no sign was posted signifying the absence of a registered pharmacist.

16. THAT the Department by competent evidence, testimony and proof, did establish that Respondent Knop dispensed the above-mentioned prescription #366931 without the supervision of a registered pharmacist.

* * *

18. THAT the Department did establish by competent evidence, testimony and proof the allegations that Respondent Humphrey, while acting as registered pharmacist in charge, was not present on August 2, 1977 and did not supervise Respondent Knop at the time of the aforementioned prescription was [*sic*] filled.

* * *

22. THAT the contradictory testimony of Respondent Knop and Respondent Humphrey introduced during Respondent's Case-in-Chief was considered by the Board and was not found to be sufficiently creditable to overcome the Department's evidence, testimony, and proof."

Thereafter, respondents Knop and Humphrey moved that the De-

partment grant them a rehearing in the matter. In the order of the director of the Department that followed, the motion for rehearing was denied, the "Findings of Fact, Conclusions of Law and Recommendations to the Director heretofore filed by the Illinois State Board of Pharmacy are adopted," the pharmacy apprentice license of respondent Knop was revoked and the registered pharmacist license of respondent Humphrey was suspended for 10 days. The pharmacy license of Orr Rexall Drugs was ordered to remain in good standing. The findings of the Director of the Department included the following:

"3. That Respondents have failed to introduce any new evidence to warrant a rehearing;

4. That after careful review of the complete record and careful deliberations, in this matter, the Director finds that the recommendation of revocation of the license of Respondent George Knop is consistent with the Findings of Fact and the Conclusions of Law.

5. That there is nothing contained in the record which would prejudice the right of Respondent, George Knop, under Chapter 111, Illinois Revised Statutes, Section 4046 from petitioning for a restoration of his license."

Upon administrative review the circuit court reversed the order of the Department. In a memorandum filed in conjunction with its order the trial court stated,

"In pursuing the record in this case, the Court finds that there was not any question of credibility of any of the witnesses, that there is nothing in the record to indicate that the Board in any way questioned the credibility of any of the witnesses, and while the Court is not concerned with this matter, it does not appear that there is any question about the truthfulness or honesty of the testimony of the witnesses in this case. However, the Court is concerned with the question whether or not the findings and decision of the Board is supported by the evidence and whether or not the findings and decision of the Board are contrary to the manifest weight of the evidence.

The only evidence before the Board in this case that Plaintiff Humphrey was not present and supervising the dispensing of the drug in this case by the Plaintiff Knop is the testimony of Mrs. Polley that she did not see or could not see the Plaintiff Humphrey in the store at the time she purchased the drug. The record is clear that she did not say he was not there, but only that she could not see him. The physical layout of the store would appear to substantiate her testimony and make it possible for this to have occurred. There were also other distractions in the store at the time such as other customers and it appears there was approximately

ten customers [*sic*] waiting at the pharmacy at the time. Plaintiffs Knop and Humphrey and also Mrs. Carter, a Clerk in the store, all testified that Humphrey was present. There is no testimony in the record anywhere to rebut their testimony in any way. It appears that the Board in this case has completely disregarded their testimony in reaching its decision."

The trial court was correct in stating that Charlotte Polley testified that she did not see respondent Humphrey behind the prescription counter, not that he was, in fact, not there. The trial court was also correct in stating not only that Miss Emma Carter, the drugstore clerk, an employee of Orr Rexall Drugs for 16 years, testified as to respondent Humphrey's presence in the drugstore at the time of the incident but also that both respondents Knop and Humphrey testified as to Humphrey's presence and supervision at that time. The court erred, however, in stating that there is no testimony in the record to rebut respondents' testimony in that respect. As steadfastly as respondents maintained that both were present at the filling of the prescription in question, Loren Polley maintained that during a telephone conversation on August 4 or 5, two to three days after the incident occurred, respondent Humphrey admitted to him that he was either out of the store or in the storeroom at the time the child's prescription was filled and that he had not seen the prescription when it was filled.

We quote verbatim Loren Polley's testimony during both direct and cross-examination with respect to that telephone conversation with respondent Humphrey. On direct examination the witness testified as follows:

"Q [Ms. Cervini, attorney for the Department]: Okay. Did you have a conversation with Respondent Mark Humphrey subsequent to August 3rd, 1977?

A [Loren Polley]: Yes, I did. I don't recall whether it was the 4th or the 5th, but one of those two days, I made a phone call over there. It had been brought to my attention Mr. Knop was not a pharmacist.

MR. BRODY [Respondents' attorney]: Objection. He has already answered the question.

CHAIRMAN BLAKE: Just answer the question.

THE WITNESS: Well, I was leading up as to why I had the conversation.

MR. BRODY: Objection.

BY MS. CERVINI:

Q: Was the conversation by telephone or in person?

A: It was by telephone.

Q: Did you place the call?

A: Yes, I did.

Q: What conversation did you have? What did you say to him, and what did he say to you?

MR. BRODY: I am going to object to that; no foundation to him. It is irrelevant what took place on August the 4th or 5th with Mark Humphrey.

CHAIRMAN BLAKE: Overruled.

BY MS. CERVINI:

Q: Please answer.

A: Ask the question again, please.

Q: In this conversation, what did you say to Mark Humphrey, and what did he say to you?

A: I asked Mark Humphrey if Mr. Knop was a Registered Pharmacist. And he told me, 'No.' What led up to that conversation—

MR. BRODY: Objection.

CHAIRMAN BLAKE: Just answer the question.

THE WITNESS: Okay. Mr. Humphrey told me at that time that he was neither in the store—or a possibility that he was in the storeroom; that he did not see that prescription at that time. That's what he told me.

CHAIRMAN BLAKE: He said that he was in the store?

THE WITNESS: He was not in the store, or he was in the storeroom when this prescription was filled out; that he did not see it."

On cross-examination the witness testified with respect to the telephone conversation as follows:

"Q [Respondents' attorney]: Had you ever met Mark Humphrey in person?

A [Loren Polley]: No, sir.

Q: When you called the drugstore, who did you ask for?

A: I did not ask for anyone.

Q: Did you talk to the person who picked up the phone, sir?

A: Yes, sir, I did.

Q: And who began the conversation?

A: I did.

Q: What did you say?

A: I introduced myself as Loren Polley.

Q: Yes.

A: And the other gentleman introduced himself as Mark Humphrey.

Q: All right. Did you ever see Mark Humphrey before?

A: No, sir, I hadn't.

Q: Had you ever talked to him on the phone before?

A: No, sir.

Q: And what did you say to Mark Humphrey?

A: He began the conversation.

Q: What did he say to you?

A: Well, he apologized; said there had been a mistake.

Q: Yes.

A: He was sorry.

Q: He did not wait for you to ask the question, but he introduced it by saying—

A: Immediately.

Q: And he apologized, is that right?

A: Yes.

Q: All right. And—

A: Then he told me toward the end of the conversation that he was either not in the store, or he was in the back storeroom; that he did not see the prescription.

Q: You are absolutely positive about that?

A: Yes, I am.

Q: Were you aggravated at the time you talked to Mr. Humphrey?

A: No, sir, I wasn't.

Q: You were as cool as a cucumber, is that right?

A: I don't know if I was cool as a cucumber.

Q: Well, did you ask Mr. Humphrey first if Mr. Knop was there—

A: No.

Q: —at the time this prescription was filled?

A: I don't follow you.

Q: Did you ask Mr. Humphrey if Mr. Knop was present at the time this prescription was filled?

A: No, I didn't.

Q: Did you ask Mr. Humphrey if he filled the prescription?

A: No, I didn't.

Q: Did you ask Mr. Humphrey if he was present at the time the prescription was filled, sir?

A: He told me that he was either—

Q: I am asking you if you asked him.

A: No, sir, I didn't.

Q: In other words, you say that Mark Humphrey volunteered the information that he was either not in the drugstore or in the store-room somewhere?

A: Yes, sir.

Q: Is that right?

A: Yes, sir.

Q: At the time the prescription was filled?

A: Yes, sir.

Q: And this allegation came out of left field somewhere, is that right?

A: Yes, sir."

Earlier, on direct examination, respondent Humphrey had testified with respect to the telephone conversation with Loren Polley as follows:

"BY MS. CERVINI:

Q: On approximately August 5th, 1977, or a few days subsequent to the filling of this prescription, did you have occasion to talk with Mr. Loren Polley?

A: Yes, I did. He called me on the telephone.

MR. BRODY: What is his name?

MS. CERVINI: Mr. Loren Polley, L-o-r-e-n.

MR. BRODY: Thank you.

BY MS. CERVINI:

Q: Did a conversation take place at that time?

A: Yes.

Q: And what did he say to you, and what did you say to him?

A: I don't recall. You know, again, it was a somewhat lengthy conversation.

MR. BRODY: I should really object because there is no foundation laid for it, but I am going to withdraw the objection, Mr. Chairman. Well, there really is—after all, they talked on the phone. I can call you on the phone and say, 'I'm President Carter,' as far as that is concerned. That is no foundation laid.

CHAIRMAN BLAKE: But you are not objecting, is that correct?

A: I remember the basically, you know, the main part, the main thing that he asked. He asked me if George Knop is a Registered Pharmacist, to which I replied, 'No, he is not. He is a Registered Pharmacy Apprentice.'

CHAIRMAN BLAKE: Who is Loren Polley now?

MS. CERVINI: I am sorry. Mr. Polley is the father of the child.

THE WITNESS: He asked if George is a Registered Pharmacist. I said, 'No, he is a Registered Pharmacy Apprentice.'

And he said something in the nature of, 'That means that he cannot fill prescriptions, is that correct?'

And I said, 'No, that's not correct, that he can fill prescriptions by law under the direct supervision of a Registered Pharmacist, which I am, and which was—which I am present at all times.'

And the rest of his—of the conversation was, you know, basically around that point. And I, again, I can't recall the—entirely all the particulars, but that was generally it."

Later, after Loren Polley had testified for the Department, respondent Humphrey testified in his own behalf as follows:

"Q [respondents' attorney]: Mr. Humphrey, were you present in the hearing room when one Loren Polley, P-o-l-l-e-y, testified?

A: Yes, I was.

Q: Could you tell the Board, please, if you talked to Mr. Loren Polley on August the 4th or 5th—

A: I talked to him.

Q: —of 1977?

A: I think it was the 5th. I did talk to Mr. Polley, yes, over the telephone.

Q: All right. And at that time did you tell Mr. Polley that you were not in the store or in the store room [sic] at the time the prescription for his son was filled for Mysoline?

A: I certainly did not.

In fact, I told him that I was present and supervising Mr. Knop at the time the prescription was filled, as always."

■■ Given the Board's findings, we can but conclude that the trier of fact disbelieved respondents Humphrey and Knop and the drugstore clerk, Emma Carter. It is well established that "[t]he weight and credibility of evidence are exclusively the province of an administrative agency (*Price v. Sanitary District* (1970), 123 Ill. App. 2d 2, 259 N.E.2d 613), and courts of review are limited to a determination of whether the decision of the agency is just and reasonable in light of the evidence presented." (*Metropolitan Sanitary District v. Huston* (1973), 9 Ill. App. 3d 855, 863-64, 293 N.E.2d 425, 431.) As was said in *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 491, 378 N.E.2d 1160, 1165:

"The findings and conclusions of the Board on questions of fact must be considered *prima facie* true and correct (Ill. Rev. Stat. 1975, ch. 110, par. 274); this means that the function of a reviewing court is limited to ascertaining whether the findings are against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713.) In order to be able to reject the Board's findings a '* * *' reviewing court must be able to say that all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous.' (*Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 1023, 349 N.E.2d 504, 508.) Where, as here, testimony of witnesses conflicts, it is the Board's duty to evaluate credibility and resolve conflict. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) A reviewing court may not reweigh the evidence to overturn the

Board's evaluation of credibility because it finds an opposite conclusion might be reasonable. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522.) The court may only determine if the evidence, as weighed by the Board, supports its findings. *Daniels.*"

■■ In the case at bar the testimony of Loren Polley was diametrically opposed to that of respondent Humphrey with respect to the crucial point of where respondent was at the time respondent Knop filled the prescription for Eric Polley. The duty of the Board was to evaluate the credibility of the witnesses and to resolve any conflict therein. As we indicated, the Board apparently resolved the obvious conflict in the testimony of these two witnesses on this point in favor of the witness Loren Polley and against respondent Humphrey, who, like respondent Knop, had the greater motivation under the circumstances to testify as he did. In light of the evidence presented we conclude that the decision of the agency was reasonable. The findings of the Board that respondent Knop dispensed the prescription in question without the supervision of a registered pharmacist and that respondent Humphrey did not supervise respondent Knop at the time the prescription was filled were not against the manifest weight of the evidence, and we therefore reverse the judgment of the circuit court.

■■ Respondents Knop and Humphrey maintain further that "the penalty imposed by the agency was arbitrary and capricious." They argue that "[t]he revocation of Mr. Knop's license represents the ultimate sanction for he can no longer practice his chosen profession. Furthermore, this has been his profession for the past 30 years." Whether it is accurate to characterize acting as a "pharmacy apprentice" as practicing a "profession" we need not determine. We do note that the findings of the Board in no way interfere with respondent Knop's continued ownership of Orr Rexall Drugs or, as the director of the Department found in her order, with respondent Knop's statutory right to petition for the restoration of his license at some time in the future. We note too that the situation presented here, in which the owner of a pharmacy is at the same time a pharmacy apprentice and necessarily inferior in knowledge and skill to the registered pharmacist whom he must employ, is one that by its nature invites abuse. Section 6.5 of the Pharmacy Practice Act (Ill. Rev. Stat. 1979, ch. 111, par. 4012) sets forth the qualifications required of a registered pharmacy apprentice:

"Any person shall be entitled to registration as a registered pharmacy apprentice who is of the age of 16 or over, of good moral character and temperate habits, employed in a drug store or pharmacy in this State under the personal supervision of a registered pharmacist in good standing in this State, a graduate from

an accredited high school or comparable school or educational institution recognized by the Department, and who has filed a written application therefor, on a form to be prescribed and furnished by the Department for that purpose, accompanied by a fee of $2.00. The Department shall issue a certificate of registration as a registered pharmacy apprentice to any applicant who has qualified as aforesaid, and such registrant shall have the authority to assist registered pharmacists in the practice of pharmacy as provided in Section 6.3 of this Act."

To be registered as a pharmacy apprentice in Illinois one need have no knowledge of pharmacy whatsoever. The need for the requirement of supervision of a pharmacy apprentice in the dispensing of prescription drugs to the general public is readily apparent. Indeed, the requirement of supervision was designed to avoid precisely the kind of error as occurred here. The revocation of respondent Knop's license as a pharmacy apprentice and the 10-day suspension of respondent Humphrey's license as a registered pharmacist for violating the supervision requirement may hardly be said to be, as respondents urge it was, an abuse of discretion by the Board.

Reversed.

KARNS and HARRISON, JJ., concur.