DAN DANIELS *et al.*, Plaintiffs-Appellants, *v.* THE POLICE BOARD OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 61379

▆▆▆▆▆▆▆

Opinion filed March 30, 1976.—Modified upon denial of rehearing May 25, 1976.

Gus P. Giannis, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Ann Acker, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court as modified upon denial of petition for rehearing:

Plaintiffs, found guilty, after a hearing by defendant, of extorting money in violation of the defendant's department regulations and dismissed as City of Chicago police officers, filed an administrative review action in the circuit court of Cook County. Upon the affirmance of the defendant's decision, they appeal to this court.

The sole issue presented for review is whether plaintiffs were sufficiently and positively identified so as to support the conclusion that the findings and decision of the defendant were not against the manifest weight of the evidence. Due to discrepancies and contradictions in the identifications and supporting evidence, as well as suspect identification procedures, in our opinion the findings and decisions are against the manifest weight of the evidence. Our recitation of the facts adduced at the hearing are limited so as to make this conclusion apparent.

Plaintiffs were charged with and found guilty of violating Rules 2, 4, 5, 21 and 45 of the Rules and Regulations of the Chicago Police Department, except that plaintiff Daniels was found not to have violated Rule 21. These rules need not be separately stated since the validity of the findings rests solely on whether it was shown that plaintiffs were sufficiently and positively identified as the persons who committed the acts alleged. It is enough to note that these rules relate to the solicitation or acceptance of bribes and the attendant violations a Chicago police officer commits by doing so.

Eleacer Arroyo testified that two "police cars," which he later twice characterized as "blue and white" pulled up in front of his liquor store between 10:30 and 11 p.m. on October 2, 1970. His wife, the only other eyewitness to the occurrences on October 2, also asserted they were "policemen's cars," although she couldn't recall the color. Documentary evidence established that plaintiffs Daniels and Herman, who were partners that evening, were driving a gray unmarked Chevrolet and that plaintiff Kane and his partner, Officer McGarry, were driving a gold, bronze or tan unmarked Chevrolet.

The Arroyos both testified that three policemen, all dressed in civilian clothes, entered the store, leaving one minor in the front car by himself and another minor in the second car with a fourth officer. Documentary and independent testimonial evidence showed that plaintiff Kane and his partner McGarry were dressed in uniform that evening.

The Arroyos testified that "the Sergeant," whom they identified at trial as Daniels, spoke to Arroyo and told him the two minors in the cars had illegally purchased liquor at his store. Arroyo asserted the minors had not identified him when he went outside to look at them. He admitted, however, after being confronted with a prior statement, that one of the minors had identified him by pointing at him. Mrs. Arroyo testified that the minor in the car with a fourth policeman had identified her husband both verbally and by pointing at him. The Arroyos asserted Mr. Arroyo was then taken into the front police car after the minor in that car was transferred to the second car. There the sergeant threatened that Arroyo's store would be closed unless he paid them $300. An arrangement was made for $150 to be paid immediately and $150 the following week. The "youngest officer," identified at trial as plaintiff Kane, then went into the store with Mr. Arroyo and received the initial $150. At trial, Arroyo admitted, when confronted with the statement, that he had told the police on October 9, 1970, that the money had been given to the sergeant rather than to the "youngest officer." Additionally, Mr. Arroyo asserted the policemen had not shown them any identification for the minors, whereas Mrs. Arroyo testified the sergeant showed her the minors' identification. Neither of the Arroyos gave any description of the officers or their attire beyond "civilian" clothing, and both asserted the officers showed them no stars, badges, credentials or other identification.

Both Arroyos testified the incident occurred between 10:30 and 11 p.m. Plaintiffs presented evidence intended to establish alibis for that time period. The only uninvolved witness testified that he saw plaintiff Kane, at the police station to which Kane was assigned, sometime between 20 minutes before and 20 minutes after 10:30 p.m. Plaintiffs themselves testified to meeting on a corner at various times between 10:30 and 10:45 to transfer to Daniels an informer who had waved down Kane and his partner McGarry to request a meeting with Daniels. McGarry testified the

corner meeting occurred between 10 and 10:30. Though Daniels and Herman both asserted that they then spent an hour with the informer at a "stake-out," neither the informer nor any other corroborative evidence of this allegation was produced.

On October 8, 1970, the Arroyos, having filed a complaint with the Internal Investigative Division of the Department, viewed photographs of the personnel of the police district where plaintiffs were stationed. Mrs. Arroyo testified she and her husband viewed the photographs together and both asserted they identified three photographs. Officer Donlon, who conducted the viewings, asserted that the Arroyos looked at the photographs in the same room, but that they viewed them separately with Mrs. Arroyo about four feet away from the books Mr. Arroyo was looking at. Donlon also testified the Arroyos only identified Daniels and Kane.

The Arroyos testified that, on the evening of October 8, two officers they identified as Herman and Daniels walked into the store. The plaintiffs do not dispute that Herman and Daniels were, in fact, in the store. Mr. Arroyo testified he, Daniels, and Herman went into the back room of the store where Daniels offered to give back the money, which offer Arroyo refused, and asked Arroyo if he had signed a complaint, which Arroyo denied. Mrs. Arroyo asserted Herman had asked, when the two entered the store, if they had made a complaint. They then went into the back room where she heard her husband ask for his money back which the officers refused to do. Daniels asserted he was checking out a harrassment complaint for an Officer Muntaner; that he, rather than Herman, talked to the Arroyos; and that he was confused by the apparent inability of the Arroyos to make themselves understood in English. Herman testified he and Daniels were checking a complaint for Officer Muntaner, and that he could not understand what Mr. Arroyo was saying beyond something about minors purchasing liquor and policemen being involved. Officer Muntaner testified he had asked Daniels to check out a complaint made by a person whose statement was introduced into evidence. The record indicates the Arroyos were Spanish-speaking persons, and that this created some difficulty, not only in this encounter but in others as well, although the board did not deem it necessary to appoint a translator for the purposes of their testifying.

At a lineup conducted on October 9, Mr. Arroyo initially identified an Officer Lawrence and three other participants, then changed his mind and identified only Daniels, Kane, and Herman as having been present in the store on October 2. At an October 15 lineup, Mrs. Arroyo identified Daniels and an Officer Aquado and failed to identify Kane, who was part of the lineup. Herman, who had not been present at the October 15 lineup, was identified by Mrs. Arroyo at a lineup on October 27. Various other witnesses testified to identifying Daniels and Herman as having been at the store on October 8 which, as stated, plaintiffs do not dispute.

Plaintiffs also presented extensive evidence as to their reputations, including departmental awards, which the department does not dispute.

## I.

The issue, as stated before, is whether the identification testimony and supporting evidence is such that the findings and decisions of the board are against the manifest weight of the evidence. Defendants argue that this court cannot consider the identification testimony since it is a question of fact about which the board's findings are presumed to be prima facie correct. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) While it is true the findings are presumed prima facie correct, they must be supported by the manifest weight of the evidence, and it is to determine this question that this court reviews the proceedings below. (*Fantozzi v. Board of Fire and Police Commissioners* (2d Dist. 1962), 35 Ill. App. 2d 248, 257, 182 N.E.2d 577, *aff'd*, 27 Ill. 2d 357, 189 N.E.2d 275; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied*, 403 U.S. 918, 29 L. Ed. 2d 695, 91 S.Ct. 2229.) The purpose of this review is not to reweigh the evidence (*Moriarty v. Police Board* (1st Dist. 1972), 7 Ill. App. 3d 978, 982, 289 N.E.2d 32), but to determine if the evidence as weighed by the trier of fact supports the findings.

It is in this role that the reviewing court may examine the sufficiency of the identification testimony, not to redetermine credibility or reweigh the likelihood of plaintiffs' alibis, but rather to examine whether enough evidence of correct identification exists on record to support the findings of violation. In doing so, plaintiffs would have us take their reputation and alibi evidence into account. We refrain from considering the reputation evidence because plaintiffs have not demonstrated its relevance to the present issue. The cases cited by plaintiffs are all criminal cases in which the standard of proof was to show guilt beyond a reasonable doubt and in which a showing of good reputation was inconsistent with the person charged having committed the alleged offense. Here the standard of proof is that of showing guilt by a preponderance of the evidence and the violations charged, based on allegations of soliciting and accepting bribes, are not necessarily inconsistent with proof of a good reputation. We do take the alibi evidence into consideration inasmuch as it is contradicted only by the identification evidence. (*People v. De Suno* (1933), 354 Ill. 387, 395, 188 N.E. 466; *People v. Peck* (1934), 358 Ill. 642, 649, 193 N.E. 609; *People v. Gardner* (1966), 35 Ill. 2d 564, 571, 221 N.E.2d 232.) However, to do so does not aid the plaintiffs since, other than testimony by an uninterested witness that he saw Kane within a time period leaving him excess time to get to the store, the only alibi evidence consists of self-serving statements and the testimony of a witness who, if Kane were a participant in the October 2 incident, could probably have been the fourth officer in the second car and thus himself an interested party. Therefore, though we take the alibi evidence into account, our

decision rests solely on our examination of the identification evidence.

The discrepancies, contradictions, misidentifications and suspect identification procedures which appear in the record demonstrate that the findings and decisions of the board that the plaintiffs were properly identified as the participants in the incident on October 2 were against the manifest weight of the evidence.

■■ A court of review is not to substitute its judgment as to the credibility of the witnesses for that of the trier of fact unless the finding made by the trier of fact is against the manifest weight of the evidence. (*E.g., Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518; *Hill v. Meister* (1st Dist. 1971), 133 Ill. App. 2d 678, 682, 273 N.E.2d 643.) To set aside a finding as against the manifest weight of the evidence, the reviewing court must be able to say that all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous. *Fugett v. Murray* (2d Dist. 1941), 311 Ill. App. 323, 333-34, 35 N.E.2d 946; *Pfister v. West* (1st Dist. 1964), 53 Ill. App. 2d 305, 311, 203 N.E.2d 35.

■■ It is hardly the typical case where the evidence the trier of fact has chosen to believe is so lacking or fatally flawed as to require reversal of the finding based upon it as against the manifest weight of the evidence. We have concluded, after examination of the record, that this is such a case.

The state of the evidence in this case is similar to that in *Wroclawski v. Waszczyk*, 35 Ill. App. 3d 408, 342 N.E.2d 261. In *Wroclawski,* the court found the evidence to be conflicting but that the finding of the trial court was palpably against the manifest weight of the evidence due to a crucial fact clearly established in the record. Here it was clearly established that Kane was in uniform, and that both police cars which defendants utilized on the evening in question were unmarked. This alone would be sufficient for reversal, even without the other myriad discrepancies on record.

On the basis of the exception to the general rule that reviewing courts will not pass on credibility of witnesses *unless* against the manifest weight of the evidence (*Brown; Hill*), we reverse the findings of the board and the affirmance of the circuit court and remand with directions to enter such orders as appropriate in accordance with the views expressed herein.

Judgment reversed and remanded with directions.

STAMOS, P. J., and HAYES, J., concur.