THE EDGEWATER HOSPITAL, INC., Plaintiff-Appellee, *v.* BIO-ANALYTICAL SERVICES, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 76-84

Opinion filed January 25, 1978.—Rehearing denied March 13, 1978.

Jack B. Schmetterer, of Gottlieb and Schwartz, of Chicago, for appellants.

Kevin M. Forde, Ltd., of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court: Bio-Analytical Services, Inc. (Bio-Analytical), and its president, Dr. Donald D. Mark, bring this interlocutory appeal from an order of the Circuit Court of Cook County denying their motion to compel arbitration

of a dispute between Bio-Analytical and the Edgewater Hospital, Inc. (Edgewater). On appeal, Bio-Analytical seeks to have this order reversed and to have the cause remanded for entry of an order to compel arbitration and to stay and enjoin all proceedings pending such arbitration.

The controversy which is the subject matter of the present action developed out of a contractual agreement entered into by Bio-Analytical and Edgewater on September 30, 1972. Pursuant to this agreement, Bio-Analytical was to manage the clinical laboratory and pathology department at Edgewater. Bio-Analytical performed those services until mid-July 1975 when Edgewater initiated an action in the Circuit Court of Cook County for damages and an accounting on the grounds that Bio-Analytical and its president, Dr. Mark, had fraudulently used the supplies, equipment and personnel of Edgewater for their own personal gain, profit and benefit.

Rather than answering the complaint, Bio-Analytical filed a motion and application under sections 1 and 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, pars. 101 and 102) to stay all proceedings and to compel the plaintiff to proceed to arbitration of all issues between the parties pursuant to paragraph 12 of their agreement. That paragraph provides as follows:

"12. AGREEMENT ARBITRATION. If any disputes may hereafter develop between the parties with respect to the interpretation or construction of this agreement or for any other reason arising from the relationship between the parties, the same shall be determined and settled under the rules for compulsory arbitration by virtue of which each party shall select an independent representative and the two representatives so selected shall jointly select a third representative. The panel of three arbitrators thus appointed shall meet with the parties and arbitrate the dispute. The parties agree to abide by the findings and recommendations of the panel. In cases where this procedure is undertaken each party shall share one-half of the total expense of arbitration. In all arbitration cases an aggrieved party shall select its arbitrator and upon written notice to the other party, the other party shall select its arbitrator within one week of notice from the first party and the three arbitrators shall reach a conclusion to the problem within two weeks of the appointment of the third arbitrator. In the event either party should fail to select an arbitrator within the period specified then either party shall have the right to immediately institute appropriate proceedings in a court of competent jurisdiction."

The hospital moved to strike the motion for arbitration on two alternative

grounds: that the dispute was not covered by the arbitration agreement or, that under paragraph 12 arbitration was not mandatory.

At the request of the trial court, the attorneys who negotiated the contract for the two parties appeared as witnesses at the evidentiary hearing on the motions; Ben Sherwood testified for Bio-Analytical and Joseph Stein appeared for Edgewater. The testimony of the two attorneys and the accompanying documentary evidence showed that the original draft of the contract had been written by Sherwood based upon a form contract which Dr. Mark had found in a professional publication. The arbitration clause in this first draft was identical to the clause in the executed contract with the exception that the first draft did not include the last sentence of paragraph 12. Sherwood's original draft was forwarded to Edgewater, whereupon Edgewater had Stein examine it. It was at this time that the last sentence of paragraph 12 was added.

Copies of this second draft were then sent by Edgewater's director, Dr. Mazel, to Dr. Mark on September 21, 1972. In the accompanying letter, Mazel informed Mark that:

"* * * since we have never been affiliated with a corporation before, it leave us sort of a dilemma regarding some of the items. Therefore, we have referred it to our attorney for further evaluation and trust this will meet with your approval."

Later, with specific reference to the arbitration clause, Mazel stated:

"We are not exactly clear on Item #12, the arbitration agreement, but feel certain this can be adjusted amicably if and when a problem arises."

On September 22, 1972, Stein sent a letter to Dr. Mark. He stated that it was his belief that there was "no substantial change in your agreement." There was no specific reference to the arbitration clause in this letter.

On September 25, 1972, Sherwood and Mark met to discuss the draft tendered by Mazel. On that date, Sherwood also talked with Stein by phone. Although Sherwood recalled a number of subjects which were specifically discussed, he did not recall having discussed the changes in paragraph 12. Similarly, his notes made pursuant to that conversation contained no reference to a discussion on the arbitration clause. Stein, on the other hand, testified that he and Sherwood did talk about the arbitration provision during their phone conversation. He stated that he specifically told Sherwood that the hospital did not want to agree to bind themselves to arbitration and that the last sentence was added to provide an option for either party to seek a legal resolution of any dispute.

On December 23, 1975, the Circuit Court of Cook County denied Bio-Analytical's motion to compel arbitration on the grounds that under the terms of the agreement, arbitration is optional rather than mandatory. The court further ordered Bio-Analytical to answer or otherwise plead to

the allegations in Edgewater's complaint but stayed the effect of the order pending appeal.

In essence, Bio-Analytical presents two principal questions for review: whether the trial court's determination that the agreement does not provide for mandatory arbitration of disputes is erroneous, and assuming that arbitration is mandatory, whether the present dispute is within the scope of the arbitration agreement. Prior to reaching those considerations, however, we must first review several evidentiary issues raised by the defendant.

First, Bio-Analytical challenges the propriety of admitting testimony by the two attorneys on the contract negotiations. Bio-Analytical presents the issue as a question of the merger of prior negotiations into the final contract and as the additional problem of the admissibility of parol evidence and argues that either doctrine serves to bar the admission of this evidence. Edgewater, on the other hand, characterizes the issue as one of contract interpretation. They suggest that the central concern in the interpretation of a contract is to effect the intent of the parties and, to this end, extrinsic evidence is always admissible.

We believe that Edgewater's characterization of the issue is more reasonable. Where the language of an instrument is ambiguous or uncertain, extrinsic evidence may be introduced to aid in the interpretation of the document so as to effectuate the intent of the parties. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242; *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) Although neither party takes the position that paragraph 12 of the contract is ambiguous, it is clear from the record that the trial court believed it to be ambiguous and we feel that its belief is justified.

The interpretation problem in the present case relates to the meaning of the last sentence of paragraph 12 of the agreement. There are, we believe, two possible modes of interpreting the sentence. On the one hand, it might be construed as providing a means by which either party could take a dispute to court rather than submitting it to arbitration. The effect of such an interpretation is, of course, to make arbitration optional. On the other hand, the sentence might be read as authorizing either party to go to court to force the other party to fulfill its duties under the arbitration clause. Under this interpretation, arbitration would be mandatory.

■■ Neither interpretation is compelled by the language of the clause. An interpretation of the last sentence as providing for the optional use of arbitration is at odds with the language of the rest of the clause which clearly discusses arbitration in mandatory terms. At the same time, Bio-Analytical's construction of the last sentence of paragraph 12 causes a semantic conflict with respect to several phrases in that final sentence. To read the last sentence as authorizing the use of court proceedings to

compel arbitration, the second use of the phrase "either party" must effectively be read as the "other party." In addition, the term "within the period specified" is ambiguous insofar as there exists no time limit for the "aggrieved party," as defined in the first portion of the clause, to select an arbitrator. Furthermore, in the absence of the last sentence, the parties would still have the ability to utilize the courts to compel arbitration pursuant to section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 102). The existence of these two possible interpretations, therefore, compels us to find that the trial court was justified in hearing extrinsic evidence on the intent of the parties.

Bio-Analytical also complains that the trial court improperly denied Sherwood the opportunity to testify about his understanding regarding the last sentence of paragraph 12. The court prohibited this testimony on the grounds that Sherwood had earlier stated that he had no recollection of ever having discussed the arbitration clause with Stein. Even if this evidence was improperly excluded, we do not feel that Bio-Analytical suffered any prejudice.

■■ A judgment will not be reversed for error unless it appears that such error affected the outcome of the trial. (*Baker v. Baker* (1952), 412 Ill. 511, 107 N.E.2d 711; *Shafer v. Northside Inn, Inc.*, (1963), 44 Ill. App. 2d 86, 194 N.E.2d 5.) It is difficult to conceive how the admission of this evidence would have led the trial court to a different conclusion. Bio-Analytical challenged the credibility of Stein's version of the September 25 telephone conversation, countered Edgewater's claim that Sherwood entered into an agreement with Stein that arbitration was optional and argued that they considered arbitration to be mandatory under the terms of the contract. However, the court chose to reject these arguments and to accept the interpretation offered by Edgewater, and we are doubtful that this decision would have been altered by the addition of the disputed testimony.

■■ We now reach the question of whether the trial court's determination that the parties agreed to the optional arbitration of disputes was erroneous. Stein's testimony, if believed, establishes that he expressly informed Sherwood that Edgewater would not agree to the mandatory arbitration of disputes. Edgewater's insecurity over the use of arbitration is clearly corroborated by statements in Dr. Mazel's letter of September 21, 1972. In addition, Dr. Mazel's statement in that letter that the arbitration issue "can be adjusted amicably if and when a problem arises," comports with the view that the parties intended the last sentence to provide for optional arbitration. We are not concerned that Stein in his letter to Dr. Mark on September 22, 1972, suggested that there had been "no substantial change" from the original draft of the contract for, in view of the fundamental agreement of the parties on the other items in the

contract, we feel that it was reasonable for Stein to conclude that the alteration of the arbitration clause was not a substantial change.

On the other hand, Sherwood testified that he did not recall that the arbitration clause had been discussed, a position which was corroborated, to a degree, by the absence of any reference to paragraph 12 in his notes made pursuant to that phone conversation. From this statement, it may fairly be inferred that either the subject was discussed and the witness simply could not recall the discussion or that arbitration was not, in fact, discussed with Stein.

■■ In effect, the testimony of both witnesses was highly self-serving in nature, thus the resolution of the question turns upon the assessment of the credibility of the witnesses. It is well established that a reviewing court will not substitute its judgment as to the credibility of the witnesses for that of the trier of fact unless the finding made is against the manifest weight of the evidence. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518; *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504.) Manifest weight has been defined as that weight which is clearly evident, clear, plain and undisputable. (*Singles v. Horwitz* (1975), 34 Ill. App. 3d 973, 342 N.E.2d 220; *Relli v. Leverenz* (1974), 23 Ill. App. 3d 718, 320 N.E.2d 169.) Since we cannot say that the determination of the trial court contravenes this standard, we hold that, pursuant to paragraph 12 of the agreement, the arbitration of disputes is optional.

Since this determination is dispositive of this appeal, we do not need to address ourselves to the question of whether the dispute was within the scope of the arbitration agreement. For the above stated reasons, we affirm the decision of the Circuit Court of Cook County and remand the case for further proceedings not inconsistent with our decision.

Affirmed.

JIGANTI, P. J., and McNAMARA, J., concur.