WILLIAM H. CLINGENPEEL, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—84—0074

Opinion filed May 20, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of Chicago, of counsel), for appellant.

No brief filed for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The respondent Secretary of State of Illinois (Secretary) appeals from an order of the circuit court of Sangamon County, sitting in administrative review, reversing an order of the Secretary which denied the reinstatement of the petitioner's driver's license. The court's order further directed that he be issued a restricted driver's license.

An administrative hearing on the question of reinstatement was held in Springfield on December 7, 1982, before one of the Secre-

tary's hearing officers. The petitioner appeared *pro se* and offered little or no objection to the proceedings. An abstract of his driving record was offered and received into evidence upon his agreement that it was "a reasonably accurate record" of his driving offenses. That record disclosed the following:

(a) October 8, 1976, arrested for running a stop sign; convicted October 25, 1976.

(b) November 27, 1977, arrested for illegal transportation of alcohol; convicted December 20, 1977.

(c) April 30, 1978, arrested for speeding; convicted May 15, 1978.

(d) May 5, 1979, arrested for driving under the influence of alcohol and leaving the scene of a property damage accident; convicted of the former April 11, 1980; of the latter on May 15, 1979.

(e) September 15, 1979, arrested for driving under the influence of alcohol and reckless driving; convicted of both on December 4, 1979. In connection with the same offenses petitioner's license was suspended for three months beginning November 18, 1979, for refusal to take a breathalyzer test.

(f) An order of revocation of petitioner's license and driving privileges was entered effective March 13, 1980, and again on January 14, 1981. No restoration had occurred.

Further evidence at the administrative hearing consisted of an alcohol evaluation form report submitted by a counselor at the Iroquois Mental Health Center at Watseka. The report indicated that petitioner had completed the "DWI program" at the Center and was not in need of treatment. The form also indicated that a written evaluation was attached. However, in the record in this court, inexplicably, the written evaluation is that of some other person and made by a counselor at a center in Moline.

As against the finding of the form report from Watseka, there appeared the testimony of the petitioner himself. He stated that he still drank on weekends, 8 to 12 beers on each occasion; further, that on these occasions he drank to a state of intoxication.

The hearing officer denied petitioner's request for reinstatement of driving privileges and made the following conclusions of law:

"1. Petitioner has multiple convictions for DUI on his driving record, which indicates a possible drinking problem.

2. Petitioner offered testimony concerning his alcohol consumption which conflicted with information he provided the alcohol counselor. He testified that he drinks as much as 10 beers

or more on any drinking occasion than he reported to the counselor. This suggests minimizing by Petitioner during the evaluation process, which may have resulted in an erroneous conclusion regarding any possible drinking problem.

3. Petitioner's testimony that he generally drinks to intoxication reflects an abnormal drinking pattern and indicates a possible drinking problem.

4. In the absence of clear and convincing evidence that no drinking problem exists, Petitioner's request for driving privileges is outweighed by consideration for public safety."

The report of the hearing officer was adopted by the Secretary, who issued an order denying reinstatement of driving privileges on February 15, 1983. The circuit court reversed that order as above described.

Since the petitioner has not filed an appellee's brief in this court, we are governed by the rule of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493. Petitioner sought reinstatement of full privileges from the Secretary; the circuit court's order reverses the Secretary's denial but affirmatively orders the Secretary to grant petitioner a restricted license. We affirm the reversal because of procedural defects but reverse the court's order insofar as it pertains to a restricted license, and remand to the Secretary for further proceedings.

On appeal the Secretary argues: (1) that the petitioner was ineligible for either full or restricted driving privileges as a matter of law, and (2) the Secretary's denial of either full or restricted driving privileges was supported by the manifest weight of the evidence.

The legal arguments are based upon a portion of The Illinois Vehicle Code and two of the Secretary's rules issued pursuant thereto. The statute is section 6—208(b) of the Code, which provides in pertinent part,

"Any person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license or permit or privilege renewed or restored. However, such person may make application for a license as provided by Section 6—106 of this Act:

(1) * * *

(2) After the expiration of 1 year from the date of revocation, and upon payment of the reinstatement fee set out in subsection (g) of Section 6—118.

In either event, the Secretary of State shall not issue such license unless and until he is satisfied after investigation of

such person that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." Ill. Rev. Stat. 1981, ch. 95½, par. 6—208(b).

The rules provide in pertinent part:

"An applicant who has been revoked for driving while under the influence must show at least six (6) months of abstinence from alcohol or drugs before any relief will be granted." 92 Ill. Admin. Code, ch. II, sec. 1001.440(b) (1983); 7 Ill. Reg. 7501, 7528 (1983).

"An applicant who has multiple (that is, two (2) or more) convictions for driving while under the influence of alcohol or drugs at any time on his abstract, there is a presumption that the applicant has an alcohol or drug problem, and reinstatement will not occur until at least five (5) years have expired since the date of the latest conviction." (92 Ill. Admin. Code, ch. II, sec. 1001.440(g) (1983); 7 Ill. Reg. 7501, 7529 (1983).)

We note parenthetically that the rule has been amended, effective April 1, 1984, to eliminate the presumption and expressly to prohibit the issuance of a license for at least five years. 92 Ill. Admin. Code, ch. II, sec. 1001.440(f) (1984); 8 Ill. Reg. 4246 (1984).

The difficulty with the Secretary's argument is that his rules were not in effect at the time of the hearing in this case, nor at the time he issued his order of denial. This situation is almost a duplicate of what occurred in *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085. In that case the administrative hearing was held January 18, 1982, and the Secretary cited his administrative standard (no license for five years after multiple convictions) which he attached to his petition for leave to appeal in the supreme court. The court said:

"We note that the administrative standard to which the Secretary cites, a copy of which was appended to his petition for leave to appeal, was not in effect at the time of the administrative hearing. A guideline similar to that cited was issued by the Secretary as an internal policy statement on December 21, 1981, and became effective on January 1, 1982. (See Secretary's Procedures and Standards, sec. III(B)(1) (1981) (eff. Jan. 1, 1982).) The policy statement was then amended by the Secretary and became effective, as an internal rule, on December 1, 1982. (See Secretary's Procedures and Standards, sec. V(2) (1982) (eff. Dec. 1, 1982).) The guideline cited by the Secretary, however, was not formally codified until April 27, 1983, and did not become effective until June 17, 1983. (See 7 Ill. Reg. 7501, 7504, 7527 (1983).) (92 Ill. Admin. Code, ch. II, sec. 1001.440(g)

(1983).)" 103 Ill. 2d 384, 392-93, 469 N.E.2d 1085.

As in *Murdy* the rules concerning six months' sobriety and a five-year wait for a license appear for the first time in the Secretary's brief in this court. There is no indication in the record that they were referred to in any manner before the hearing officer or the circuit court. Hence, as in *Murdy*, the petitioner had no opportunity to respond to them.

Rather, the tenor of the hearing officer's report leaves the clear innuendo that he was following the Secretary's internal rule referred to in *Murdy*. That instrument provided:

> *"Two or more DUI convictions*: 1. If a petitioner has two or more DUI convictions, a presumption of an alcohol problem arises. This presumption is rebuttable upon presentation of clear and convincing evidence that the problem, if any, is under control and that he is a low risk for repeating this behavior. 2. The petitioner must have a minimum of twelve (12) consecutive months of documented sobriety. If the petitioner rebuts the presumption of an alcohol problem, he may be issued an RDP if he/she has not driven for at least a year. 3. Reinstatement will not be granted until after 5 years following the latest revocation, unless the applicant demonstrates by clear and convincing evidence on the record that no alcohol problem exists and the applicant will not be a threat to safety on the highway. The burden of proof is on the applicant. The rationale behind this policy is that the petitioner's driving record makes him a high risk and he must demonstrate through driving on restricted privileges, that he is deserving of reinstatement."

■ Minimal due process requires that one in petitioner's position know the standards under which his request for reinstatement will be judged. This is one of the purposes of properly promulgated rules. The general public would have no way of knowing the content or potential effect of an internal rule.

A "rule" is defined in section 3.09 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1003.09) as follows:

> " 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency."

The Act further provides in section 4(c) (Ill. Rev. Stat. 1981, ch. 127, par. 1004(c):

> "No agency rule is valid or effective against any person or

party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act. This provision is not applicable in favor of any person or party who has actual knowledge thereof."

The respondent Secretary in this case is an "agency" within the definition of the Act (Ill. Rev. Stat. 1981, ch. 127, par. 1003.01) and is vested with rule-making power under section 2—104(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 2—104(b)).

In applying these statutes to the instant case, we see that the rules cited by the Secretary were not in effect at the time of the hearing, December 7, 1982. As pointed out in *Murdy*, the internal rule, set forth above, became effective within the Secretary's agency on December 1, 1982, but was not formally codified until April 27, 1983, and did not become effective until June 17, 1983.

It has been frequently held that rules apply to the general public but internal rules do not. See *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029; *Holliday v. Civil Service Com.* (1984), 121 Ill. App. 3d 763, 460 N.E.2d 358; *Moriearty v. Civil Service Com.* (1985), 131 Ill. App. 3d 198, 474 N.E.2d 1291.

■ It therefore follows that petitioner was deprived of minimal due process and is entitled to a new hearing on the question of reinstatement, which must be conducted under whatever properly promulgated rules existed on December 7, 1982. Compare *Gonzales-Blanco v. Clayton* (1982), 110 Ill. App. 3d 197, 441 N.E.2d 1308; *Cartwright v. Illinois Civil Service Com.* (1980), 80 Ill. App. 3d 787, 400 N.E.2d 581.

While we are not called upon to decide the question in the case at bar, we do express reservations about the rules relied upon by the Secretary here. It will be noted that the statute authorized a driver whose license has been revoked to apply for reinstatement after the expiration of one year. Notwithstanding, the rule declares that no such application will be entertained by the Secretary for five years in the case of multiple DUI convictions. While this may be an exercise in general discretion, it is scarcely the individual discretion called for in the statute. The same may also be said of the six-months' sobriety requirement, which also gives the appearance of mounting a condition upon a condition.

■ We turn next and briefly to the question of the restricted license ordered by the circuit court. This was not specifically sought by the petitioner at the administrative hearing, and therefore appears to have been treated by the trial court as lesser relief. It was predicated

upon a finding that the petitioner would suffer undue hardship in his employment without a restricted license. We find that this is erroneous.

Petitioner testified that he lives only one mile from his place of employment and that his wife drove him to work in the morning; he was required to find a ride home in the evening but generally did so. He demonstrated no need for a car during working hours. The trial court's finding was that he needed a restricted license "to drive a motor vehicle during regular working hours for employment purposes." That is not borne out by the record.

For all the foregoing reasons, the order of the circuit court of Sangamon County is affirmed insofar as it reversed the order of the Secretary; it is reversed insofar as it ordered a restricted license be issued to the petitioner; and it is reversed insofar as it remanded to the Secretary for the purpose of issuing such a license. The cause is remanded to the Secretary for a new hearing in accordance with the views expressed herein.

Affirmed in part, reversed in part, and remanded.

GREEN, P.J., and TRAPP, J., concur.