JERALD E. AGANS, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—85—0559

Opinion filed April 29, 1986.

■

■

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Karin Kepler, Assistant Attorney General, of Chicago, of counsel), for appellant.

David E. Leefers, of Jacksonville, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The Secretary of State (Secretary) appeals the order of the circuit court of Sangamon County upon administrative review which reversed the decision of the Secretary denying the plaintiff a restricted driving permit. The circuit court further ordered the Secretary to restore the plaintiff's license and driving privileges.

On September 19, 1978, plaintiff was arrested for operating a motor vehicle without a valid driver's license, improper traffic lane usage, and driving while under the influence of alcohol (Ill. Rev. Stat. 1977, ch. 95½, pars. 6—101, 11—709(a), 11—501). Before a hearing was held on these offenses, plaintiff was again arrested on October 20, 1978, for driving while under the influence of alcohol. Plaintiff was convicted of the two non-alcohol-related charges on October 31, 1978. The two charges of driving while under the influence of alcohol were heard together on December 5, 1978. Plaintiff pleaded guilty to both charges and was convicted. On December 22, 1978, two orders were issued revoking plaintiff's license and driving privileges pursuant to section 6—205(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—205(a)(2)). The driving privileges of plaintiff have not been restored since the entry of the orders. Subsequently the orders revoking plaintiff's license and driving privileges were extended effective July 30, 1980, because of plaintiff's conviction on June 16, 1980, for driving while his license was revoked. Ill. Rev. Stat. 1977, ch. 95½, par. 6—303.

Plaintiff made application for full reinstatement of driving privileges in 1982 and 1983 and made written requests for formal hearings thereon. The hearings were held on June 10, 1982, and August 11, 1983. Both requests were denied by the Secretary.

Plaintiff made written application for a restricted driving permit in the fall of 1984. Shortly thereafter, by letter dated October 22,

1984, plaintiff's attorney requested a formal hearing "to determine whether or not [plaintiff's] driving privileges should be reinstated." The cause was set for hearing on December 12, 1984. Plaintiff's counsel had a conflict on the day of the hearing, and plaintiff elected to proceed *pro se* in spite of the opportunity for a continuance offered by the attorney for the Secretary. At the hearing plaintiff's driving record was admitted, and the hearing officer took judicial notice of the files of the two previous hearings in 1982 and 1983. Plaintiff presented his testimony and introduced an alcohol assessment from the Jacksonville Area Council on Alcoholism (JACOA), a letter certifying completion of the Libertas Chemical Dependency Program of St. John's Hospital, and several recommendation letters from relatives, work supervisors, and fellow members of the local Alcoholics Anonymous chapter (AA). In a written order dated February 14, 1985, the Secretary denied plaintiff's application for a restricted driving permit but made no decision regarding reinstatement of plaintiff's driving privileges. In the findings and recommendation of the hearing officer, the hearing officer recorded the requested relief as a restricted driving permit and recommended denial of the same.

On July 18, 1985, the circuit court, upon administrative review, reversed the Secretary's decision and, further, ordered the Secretary to restore the license and driving privileges of plaintiff. The Secretary filed notice of appeal on August 16, 1985. The Secretary moved to stay the circuit court's order pending appeal, but the circuit court denied the motion. The Secretary appealed the denial, and we stayed the order of the circuit court until further order.

The two issues raised on appeal are (1) whether the Secretary's decision to deny plaintiff a restricted driving permit is against the manifest weight of the evidence and (2) whether the failure of the Secretary to consider the restoration of full driving privileges to plaintiff at the hearing is error such that the lower court was justified in ordering reinstatement of plaintiff's license.

The law in the State of Illinois is clear that once a person's privilege to drive has been revoked the restoration of that privilege is not an automatic matter. (*People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897.) The Secretary of State has considerable discretion in issuing licenses to persons whose licenses have been revoked:

> "Any person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license or permit or privilege renewed or restored ***.

*  *  *

\*\*\* [T]he Secretary of State shall not issue such license unless and until he is satisfied after investigation of such person that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b).)

The preeminent interest in public safety applies equally to the issuance of a restricted driving permit: "[T]he relevant inquiry before issuing a restricted driving permit is the danger to the public safety and welfare." *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 392, 469 N.E.2d 1085, 1089.

Because we consider the issue of whether the Secretary's decision is against the manifest weight of the evidence, we must look in detail at the facts in the record.

At the hearing on December 12, 1984, the Secretary offered plaintiff's driving record as evidence, that record showed a conviction for illegal transportation of alcohol in May 1977, two convictions for driving while under the influence of alcohol in December 1978 as well as two convictions for non-alcohol-related offenses arising out of the circumstances surrounding one of the driving-while-under-the-influence-of-alcohol convictions, and a conviction in June 1980 for driving while his license was revoked. Along with this evidence, the hearing officer took judicial notice of the files of plaintiff's two previous hearings on request for restoration of full driving privileges.

The file from the first hearing on June 19, 1982, contained an alcohol assessment and a remedial-education evaluation form completed by Ron Blimling, the education coordinator for JACOA. Blimling stated on the evaluation form that he "would like for [plaintiff] to meet initially with [an] outpatient counselor to explore [his] current drinking pattern." Some eight days later, in preparing the alcohol assessment, Blimling explained his initial doubts about whether plaintiff had resolved his alcohol problem as bias "due to the client's track record from previous treatment here at JACOA in 1978, and word of mouth from the community at large." Blimling stated, "I now cannot say honestly that the client still has any problem at all with alcohol due to his employee record and letters from his friends." Finally Blimling noted that plaintiff successfully completed an alcohol impaired driver's program. He recommended plaintiff receive restoration of driving privileges. Included, also, in the file were three letters from plaintiff's supervisors from his place of work and five letters from friends attesting to plaintiff's character and, on the whole, stating that plaintiff had no problems with alcohol.

At the conclusion of the first hearing, the Secretary denied plain-

tiff's application on the basis that plaintiff appeared to have a drinking problem and had failed to submit sufficient evidence to show the problem was solved. Therefore, plaintiff had not "overcome the Secretary of State's interest in public safety and welfare."

The file from the second hearing, on August 11, 1983, contained an updated alcohol assessment and an alcohol evaluation form, again completed by Blimling. On their face the assessment and the evaluation recommended plaintiff take different paths. The evaluation form stated that plaintiff had a current alcohol problem and recommended treatment. In the assessment Blimling noted plaintiff's perception of himself as a " 'normal drinker,' " that is, " 'someone who may or may not have a beer after work.' " The counselor's conclusion was that he could perceive "nothing to indicate any problems with [plaintiff and] alcohol over the past five years," and recommended plaintiff receive full driving privileges. The hearing officer noted in his findings the apparent contradiction in the evidence between the alcohol assessment and the alcohol evaluation from Blimling. The hearing officer found that plaintiff, on oral examination, denied having been treated for alcoholism but further stated that he had followed the programs recommended by Blimling. Plaintiff admitted his then current practice of having a couple of beers with friends after work and a few more when he got home.

The hearing officer evaluated the evidence and the testimony, including the discrepancies, and concluded that he could not find that the "high risk syndrome is not in existence"; the interest in public safety and welfare outweighed plaintiff's interest in a driver's license. Plaintiff made no appeal of either of these decisions by the Secretary.

At the hearing on December 12, 1984, from which this appeal derives, plaintiff again submitted an updated alcohol assessment, completed by Sheryl Johnson, the new education program coordinator at JACOA. No evaluation forms accompanied this assessment. Plaintiff reported to Johnson that he had maintained total sobriety for the preceding three to four months, that is, from August 1984 until the assessment on December 10, 1984. From September 1983, the date of plaintiff's last assessment, until August 1984 plaintiff had "on a very few occasions" been drinking. Plaintiff entered an alcohol rehabilitation program in August 1984. Plaintiff completed the program, was involved in aftercare sessions through the same program on a weekly basis, and attended AA meetings at least twice per week. Plaintiff's daughter attended the assessment and verified plaintiff's statements. On the basis of these facts, Johnson stated her belief that plaintiff would not "repeat his previous alcohol pattern" and that he had "a

strong handle on his recovery." Plaintiff also introduced a letter certifying his completion on September 27, 1984, of the Libertas Chemical Dependency Program of St. John's Hospital (Libertas) and his regular attendance at continuing care group sessions. In support of his regular attendance at AA meetings, plaintiff submitted three letters from fellow members. Two letters submitted from supervisors at plaintiff's place of work attested to his good character and the absence of any problems at work due to alcohol. Finally, plaintiff offered two letters, one from his daughter and one from his aunt, testifying to his struggle with alcohol and his recent successes in overcoming his struggle due, in large part, to his participation in the Libertas program.

Plaintiff acknowledged in his testimony at the hearing that he was an alcoholic. He had difficulty in the past admitting his addiction to alcohol. Plaintiff stated he had last had something to drink at a 1984 New Year's celebration. From then until August 1984 he testified he had abstained from alcohol, but found it hard to do so. In August 1984, due to some personal problems, plaintiff felt his willpower to refrain from alcohol fading. He visited his physician looking for an answer. The physician recommended the Libertas program and plaintiff admitted himself into treatment. Plaintiff stated that he had no problem in refraining from alcohol since his participation in the program. After the program ended, plaintiff became actively involved in alcohol-abuse support groups, including a weekly aftercare group session through the Libertas program. Plaintiff attended AA meetings at least twice per week and sometimes as often as five times per week. Plaintiff asserted the support groups and the treatment and training he received in the Libertas program had helped sustain him through recent stressful personal problems without a relapse into drinking. Plaintiff admitted, however, that over the last five or six years he had quit drinking on his own six or seven times. These periods of abstinence usually lasted two or three months.

Plaintiff gave testimony on his need for the driver's license. Plaintiff lived in Jacksonville but his aftercare group sessions were at St. John's Hospital in Springfield. Plaintiff's daughter had previously driven him to these sessions, but she was moving to Indianapolis to accept a new job and would no longer be available. Plaintiff did not need a driver's license for work purposes, as his work was located a mile to a mile and a half from his home. He presently used a taxi to get to and from work or walked if the weather permitted. Plaintiff stated, however, that he could obtain a better job if he had a driver's license. He currently worked as a housekeeper for the department of health. Yet, he was licensed as a nursing home operator and wished to

pursue a job in that area. He testified that there were several jobs available in the State. He would be willing to relocate if he obtained a job in a different town. He further testified that he had turned down "better paying positions" because he did not have a driver's license. Finally, plaintiff desired a driver's license in order to purchase necessary items for his elderly aunt who lived with him. She also had need of transportation to receive medical care.

On the basis of plaintiff's testimony and the written evidence, the Secretary concluded that plaintiff had an alcohol problem in the past and that he had not shown the problem was resolved. Also, plaintiff did not demonstrate an undue hardship sufficiently enough to warrant a restricted driving permit.

■ We recognize the rule that courts of review are limited to determining whether an agency's findings are against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085; *Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) In order to so find, it is necessary that an opposite conclusion be clearly evident from the evidence presented. (*United Air Lines, Inc. v. Illinois Fair Employment Practices Com.* (1979), 69 Ill. App. 3d 519, 387 N.E.2d 875.) "That an opposite conclusion might be reasonable or that the court might have reached a different conclusion is not adequate to set aside the agency's decision." (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653, 456 N.E.2d 998, 1002-03.) In our research, we find that other districts have alternatively stated the rule as follows: In order to set aside the agency decision the reviewing court must find that all "reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous." (*Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 1023, 349 N.E.2d 504, 508; *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 456 N.E.2d 998; *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 485 N.E.2d 871; see *Sicinski v. Will County Police Department Merit Com.* (1985), 131 Ill. App. 3d 966, 476 N.E.2d 808; *Knop v. Department of Registration & Education* (1981), 96 Ill. App. 3d 1067, 421 N.E.2d 1091.) We refer to the discussion by the United States Supreme Court in *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, regarding the scope of review in a *habeas corpus* appeal of a State court conviction. In that case the supreme court regarded the duty of a court of review to "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." (443 U.S. 307, 318, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89.) In

elaborating upon this standard, the supreme court stated the reviewing court is not to reweigh the evidence adduced at trial and make its own determination of guilt or innocence. Rather, as the court states: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) We believe the reasoning of the supreme court parallels the standard of this court for administrative review. (*United Air Lines, Inc. v. Illinois Fair Employment Practices Com.* (1979), 69 Ill. App. 3d 519, 387 N.E.2d 875; *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 456 N.E.2d 998; *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504.) We prefer the language of the supreme court and hold that in order for the circuit court to find the Secretary's decision is against the manifest weight of the evidence, the circuit court must determine, after viewing the evidence in the light most favorable to the Secretary, that no rational trier of fact could have agreed with the Secretary's decision. See *Jackson v. Virginia* (1979), 443 U.S. 307, 324, 61 L. Ed. 2d 560, 576-77, 99 S. Ct. 2781, 2791-92.

■ Applying the above standard to the facts of this case, we find the Secretary's decision within the bounds of reason such that any rational trier of fact could have found sufficient, credible evidence in the record to deny plaintiff a restricted driving permit.

Plaintiff argues the evidence in the record does not support the Secretary's finding that plaintiff currently has an alcohol problem. (See *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) We disagree.

The administrative hearing from which this appeal originates is plaintiff's third hearing requesting the Secretary to restore driving privileges to him. In the first two hearings plaintiff submitted evidence from a professional counselor, Blimling, stating in fairly certain terms that plaintiff had no alcohol problems. The counselor initially suggested, in his first alcohol assessment, plaintiff seek further counseling regarding his pattern of drinking. Eight days later, however, the counselor altered his views and stated that he could not perceive any alcohol problems in the plaintiff. The second alcohol assessment was equally as certain about plaintiff's ability to consume alcohol responsibly. It is clear, however, that plaintiff had a serious alcohol problem which persisted at least until plaintiff admitted himself into the Libertas program. Although plaintiff repeatedly denied having any alcohol problems to Blimling and to the hearing officers at the first two

hearings, he admitted at this third hearing that he was an alcoholic. Plaintiff, feeling at the end of his resistance to alcohol, sought the help of his physician in August 1984, and at his physician's recommendation had himself admitted as an in-patient at the Libertas program. At the time of the hearing, plaintiff had been out of the hospital for approximately 2½ months. In view of plaintiff's testimony that he had stopped drinking on his own several times, but had always returned to alcohol after two or three months, it is reasonable for the Secretary to conclude that plaintiff had not shown sufficient evidence to prove he had conquered his alcohol problem.

We note plaintiff's heavy commitment to alcohol-abuse support groups. We also acknowledge the optimistic opinion on the most recent alcohol assessment that plaintiff has "a strong handle on his recovery." We applaud and encourage plaintiff in his endeavors to master his addiction to alcohol. We agree with plaintiff that he has taken every reasonable step to combat his addiction. We cannot say, however, that the passage of 2½ months since plaintiff's commitment to these activities is a sufficient period of time to conclude that plaintiff has no current alcohol problem.

■ Plaintiff argues the Secretary's findings and conclusions are deficient and should be set aside because the Secretary made no finding that plaintiff was a danger to the public safety and welfare. The Secretary's conclusions, instead, focused solely on whether plaintiff had an alcohol problem. Plaintiff argues the Secretary made no finding about plaintiff's danger to the public as he was not a risk. We reject this argument. Plaintiff's driving problems find their cause in plaintiff's abuse of alcohol. All of the convictions on plaintiff's record stem from arrests involving the use of or transportation of alcohol except for the last, the last conviction being for driving with license revoked. The findings of the hearing officers at the previous hearings were clearly based on plaintiff's risk to public safety due to alcohol problems. The Secretary could focus on alcohol-related evidence at this hearing because plaintiff's driving problems resulted from his abuse of alcohol.

The Secretary relies on the regulations in the Illinois Administrative Code (92 Ill. Admin. Code, ch. II, sec. 1001.400 *et seq.* (1984)) to support the finding that plaintiff did not demonstrate an undue hardship. The regulations of the Secretary have the force and effect of law. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87.) The regulations of the Secretary on February 14, 1984, the date of the order, govern-

ing undue hardship are as follows:

" 'Undue Hardship' means, as used in the context of Chapter 95½, Sections 6—205(c) and 6—206(c)3, Ill. Rev. Stat. 1981, an extreme difficulty in regard to getting to or from an applicant's place of employment or to operate on a route during employment, e.g. as deliveryman, because of the suspension or revocation of the applicant's drivers license. It is more than mere inconvenience on the applicant, and pertains only to the applicant. All other reasonable means of transportation must be unavailable to the applicant. An undue hardship is not shown by the mere fact that the drivers license is suspended or revoked." 92 Ill. Admin. Code, ch. II, sec. 1001.410 (1984); 8 Ill. Reg. 4220, 4242 (1984).  ·

(c) An applicant must show that an undue hardship is being suffered currently by the applicant. Mere inconvenience to the applicant, or family and friends is not undue hardship. The applicant should produce clear and convincing evidence as to: the non-availability of other means of transportation to the place of employment, such as walking, mass transit, car pools, or being driven; how applicant is currently getting to work; whether driving is required on the job; the distance between the applicant's residence; and similar factors." (92 Ill. Admin. Code, ch. II, sec. 1001.420(c) (1984); 8 Ill. Reg. 4220, 4242 (1984).)

Utilizing these regulations we find the decision by the Secretary sustained by the evidence in the record.

Plaintiff lives approximately 1 to 1½ miles from work. He walks if the weather permits or takes a taxi. His job does not require that he drive. (See *Clingenpeel v. Edgar* (1985), 133 Ill. App. 3d 507, 478 N.E.2d 1172 (where plaintiff lived one mile from work, got a ride to work from his wife and usually was able to find a ride home, and had no need to drive once at work, the court upheld the Secretary's decision denying plaintiff a restricted driving permit).) Plaintiff argues he could obtain a better job if he had a driver's license. He states he has had to turn down "better paying jobs" due to his lack of driving privileges. Even assuming the Secretary's regulations on employment could be interpreted to include looking for a better job, we find plaintiff did not offer sufficient evidence of other jobs at the hearing. Plaintiff offered no evidence, other than his testimony, of other potential jobs. Plaintiff offered no evidence of job applications for other positions, nor invitations to interview from potential employers, nor why they would require him to drive. (See *Breiner v. Edgar* (1985), 130 Ill. App. 3d 1010, 474 N.E.2d 1373 (where plaintiff brought to the hear-

ing affidavits from his present employer requiring plaintiff to have a driver's license or face termination).) Plaintiff demonstrates no undue hardship with regard to his employment.

Plaintiff next argues the need for a driver's license to attend his continuing care group sessions in Springfield. We note that the regulations have been amended recently to include a definition of undue hardship as it applies to necessary medical care, including aftercare sessions. (92 Ill. Admin. Code, ch. II, sec. 1001.410 (1986); 10 Ill. Reg. 4558, 4588 (1986).) The amendment was not in effect at the time of the Secretary's order and, therefore, has no effect on this disposition. It does, however, imply a new basis for plaintiff to request a restricted driving permit providing, of course, that plaintiff can sustain his burden of proof.

Under the regulations in effect at the time of the Secretary's order, plaintiff again fails to meet the burden of showing undue hardship. The regulation provides only for undue hardship as it relates to employment. Further, plaintiff submitted no evidence to show there were no viable alternatives in Jacksonville to this particular aftercare program.

Plaintiff finally argues the need for a driver's license in order to care for his elderly aunt. Plaintiff believes the license necessary because his aunt will be dependent upon him for transporting her to medical care and purchasing necessary items. Plaintiff's daughter had been providing these services but she was moving out of town to accept a new job. The definition of undue hardship is narrow in that it "pertains only to the applicant" (92 Ill. Admin. Code, ch. II, sec. 1001.410 (1984)). Therefore, the Secretary could reasonably decide to deny plaintiff a restricted driving permit. We hold that, under our rule of law, any rational trier of fact could have found sufficient, credible evidence in the record to deny plaintiff a restricted driving permit.

■ The second issue raised in this appeal is whether the Secretary's failure to consider reinstating plaintiff's license requires a new hearing on the matter. The Secretary initially argued the trial court had no jurisdiction to consider the issue of reinstatement but conceded in his reply brief that plaintiff had raised the issue at the hearing. The circuit court, therefore, had jurisdiction to consider the issue. The Secretary now argues his failure to make any findings regarding reinstatement is harmless error. Plaintiff argues the omission by the Secretary was arbitrary and capricious and justified the trial court's order restoring plaintiff's full driving privileges.

■ As we find no evidence of an intentional omission on the part

of the Secretary or the hearing officer, and in light of our decision to uphold the Secretary's denial of a restricted driving permit, we hold the failure to consider the issue of reinstatement is harmless error.

It is clear that the hearing on December 12, 1984, dealt only with the relief of granting plaintiff a restricted driving permit. It is unclear as to why the hearing officer ignored the issue of reinstatement. The most probable explanation is simply error. Plaintiff initially made application for a restricted driving permit. No date is written on the application. On October 22, 1984, plaintiff's attorney requested, in writing, a formal hearing on whether plaintiff's "driving privileges should be reinstated." David Leefers, plaintiff's attorney, presumedly would have made a clear presentation of plaintiff's request for reinstatement or, alternatively, a restricted driving permit. Leefers, however, was not present at the hearing, and plaintiff chose to proceed *pro se*. Had Leefers been present, the confusion regarding the requested relief would, in all probability, have been avoided. The Secretary made findings with regard to a restricted driving permit only.

Where it appears from the record that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed. (*Both v. Nelson* (1964), 31 Ill. 2d 511, 202 N.E.2d 494.) The Secretary considered plaintiff's application for a restricted driving permit and ignored the relief of restoration of full driving privileges. A restricted driving permit is a privilege to drive limited by certain conditions imposed by the Secretary and granted in cases of undue hardship. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—205(c).) Restoration of full driving privileges affords plaintiff greater relief than a restricted driving permit. If the Secretary denied plaintiff a restricted driving permit, he would have denied reinstatement also. The failure to consider reinstatement is harmless error.

The order of the circuit court is reversed, and the order of the Secretary is reinstated.

Circuit court reversed; order reinstated.

McCULLOUGH, P.J., and SPITZ, J., concur.