ROBERT R. KOECK, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (2nd Division)   No. 1—87—2783

Opinion filed February 28, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Diane Curry-Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellant.

Kavathas & Castanes, of Chicago (Samuel A. Kavathas, Jr., of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff filed suit in the circuit court seeking administrative review of the Secretary of State's (Secretary's) decision denying his petition for reinstatement of his driving privileges or, in the alternative, for a restricted driving permit. The trial court found that the Secretary's refusal to restore plaintiff to his full driving privileges was against the manifest weight of the evidence. Accordingly, the judge ordered that the case be remanded to the Secretary and ordered full reinstatement. The Secretary appeals.

The Secretary raises the following issues on appeal: (1) whether the trial court properly found that his decision not to reinstate plaintiff's full driving privileges was contrary to the manifest weight of the evidence, and (2) whether his decision to deny plaintiff a restricted driving permit was against the manifest weight of the evidence.

Because the scope of our review is narrowly confined to the issue of whether the Secretary's decision is against the manifest weight of the evidence, a detailed examination of the record made in this case is in order.

Plaintiff is a self-employed automobile mechanic in Glenview, Illinois, approximately six miles from his home. His mother drives him to and from work. Plaintiff's job requires him to test-drive cars, but at the time of the administrative hearing, he employed someone part time to perform that function.

Plaintiff was convicted for driving under the influence of intoxicating liquor (DUI) on January 10, 1983, and as a result, his driver's license was revoked on March 24, 1983. He had been arrested for DUI on two prior occasions, neither of which resulted in conviction. In addition, the plaintiff's driving record includes the following notations:

| | |
|---|---|
| Conviction for disregarding stop sign | 6/8/77 |
| Conviction for speeding | 4/19/78 |
| Conviction for speeding | 6/13/78 |
| License suspension for three or more moving violations in a 12-month period | 10/12/78 |
| Convicted for lighted lamp violation | 6/28/78 |
| Conviction for speeding | 8/22/78 |

| | |
|---|---|
| Conviction for speeding | 9/4/78 |
| License suspension for three or more moving violations in a 12-month period | 12/4/79 |
| Conviction for speeding | 9/19/79 |
| License suspension for three or more moving violations in a 12-month period | 3/1/80 |
| Conviction for reckless driving (reduced from DUI) | 12/18/81 |

Also of importance is plaintiff's arrest in 1985 for driving in a parking lot while his license was revoked; he was then road-testing a car on the premises of his former employer. As a result of this arrest, he was put on supervision, which has since terminated. When asked at the administrative hearing if he made it a regular occasion to test-drive cars at his place of employment, the plaintiff responded, "[N]o, the least amount possible, and I never went off our lot."

As noted above, plaintiff's last arrest for DUI occurred on January 10, 1983, in Cook County at 2:37 a.m. Prior to being stopped, plaintiff consumed a six-pack of beer and two shots of whiskey within a three- or four-hour period. He admits that he knew he should not have been driving. After plaintiff was convicted on this charge, his license was revoked. In July of 1983, he sought a restricted driving permit (RDP), but the Secretary of State denied his request. Subsequently, in August of 1985, plaintiff sought reinstatement of his driving privileges, or in the alternative, an RDP, and again the Secretary denied plaintiff any relief. In October of 1986, plaintiff, for a third time, sought reinstatement of his driving privileges or an RDP, and for the third time, the Secretary denied the request.

At the October 1986 hearing, plaintiff testified that prior to his last arrest for DUI, he often drank to the point of intoxication, but after his conviction for DUI in 1983, and before the 1985 hearing, he had cut down his drinking to a "couple of times a week." He contends that he now has further reduced his drinking to "only a few beers" on weekends.

Plaintiff has completed three alcohol drug assessments: in 1983, 1985 and 1986. In 1983, his alcohol assessor found that plaintiff appeared to be in the beginning stages of recovery/remission of alcoholism, and recommended that plaintiff abstain from alcohol and continue with regular Alcoholics Anonymous (AA) attendance. Plaintiff attended 11 AA meetings, but stopped going to them when his sponsor, who drove him to the meetings, moved to Wisconsin and he was left without transportation. Plaintiff never worked on any of the AA steps, although he states that he worked toward his goal, which was

to stop drinking. The 1985 assessment classified the plaintiff as "non-problematic."

The 1986 assessment also classifies plaintiff as "non-problematic"; however, the Secretary claims that the assessor was not aware of certain vital information when making this assessment. For example, the assessor states that plaintiff was arrested only twice for driving under the influence when in fact plaintiff was arrested three times. In addition, the assessor notes a reckless driving charge of 1981 as not involving alcohol, when it was in fact an alcohol-related incident. It is unclear as to why there were these gaps in the assessor's information. Plaintiff stated in his testimony at the hearing that he did not show the assessor copies of his first alcohol assessment, but that the assessor was aware that he had gone through the program. The assessor, however, did have a copy of his 1985 evaluation.

At the 1986 hearing, plaintiff testified that he attended two sets of Alcohol Safety Education classes, explaining that he attended them because "one was required by the courts. *** The other one I went through in order to try and get a Restricted Driving Permit." Plaintiff acknowledges that he was an alcoholic at one time and that he took "speed" in the form of diet pills for approximately two months.

After considering the evidence, consisting of the exhibits and testimony of the parties, the 1986 hearing officer found that there were inconsistencies between plaintiff's first and last alcohol assessments concerning the nature and extent of his "use/abuse" of alcohol, and that it was clear that the first assessor intended for plaintiff to continue with AA attendance in order to help him abstain from the use of alcohol.

The hearing officer concluded that given plaintiff's past driving record and the conflicting evidence concerning the nature and extent of his alcohol "use/abuse," plaintiff failed to demonstrate that he would be a safe and responsible driver and that he would not endanger the public safety and welfare. Accordingly, the hearing officer recommended that plaintiff's petition for full driving privileges or, in the alternative, an RDP be denied. On October 8, 1986, the hearing officer's findings of fact and conclusions of law were adopted by the Secretary; consequently, plaintiff was denied full reinstatement of driving privileges and an RDP.

Thereafter, on November 13, 1986, plaintiff filed his complaint in administrative review in the circuit court. On August 4, 1987, the trial judge held that the Secretary's decision to deny plaintiff full reinstatement of his driving privileges was improper and against the manifest weight of the evidence, and ordered the Secretary to rein-

state plaintiff's full driving privileges. This appeal followed.

■■ Our motor vehicle code declares that once driving privileges have been revoked, their restoration is not automatic. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208(b)(2).) The Illinois Vehicle Code is also held to have been designed to promote and protect the safety of the public. (*Blue Arrow Douglas, Inc. v. Howlett* (1977), 54 Ill. App. 3d 230, 369 N.E.2d 272.) In considering restoration, the State must determine whether granting the privilege of driving a motor vehicle on our highways will not endanger the public safety or welfare. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) Indeed, the Secretary is directed *not* to restore driving privileges until he is satisfied after investigation that the applicant will not present such a danger. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208(b); *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897.) It is plaintiff who bears the burden of establishing entitlement to restoration of his driving privileges by clear and convincing evidence. (*Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 498 N.E.2d 295.) Our courts are uniform in holding that the public interest in curbing the epidemic number of deaths and injuries attributable to drunk driving by keeping unsafe drivers off the streets outweighs the interests of convicted drunk drivers in regaining their driver's licenses. See *Sutton,* 147 Ill. App. 3d 723, 498 N.E.2d 295; *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929; *Hannay v. Edgar* (1988), 175 Ill. App. 3d 559, 529 N.E.2d 1101.

■■ Of paramount importance for the purpose of our review of the Secretary's determination in this case is the exceedingly narrow scope of that review, for our quest is confined to ascertaining whether the administrative agency's findings are against the manifest weight of the evidence. Among the guidelines to be considered in our arriving at that decision are the following: Under section 3—110 of our Administrative Review Law, findings and conclusions of an administrative agency on questions of fact are to be considered *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) Moreover, an administrative decision may not be interfered with unless the administrative body exercised its authority in an arbitrary or capricious manner. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) Nor may the reviewing court reweigh the evidence. (*Odell v. Village of Hoffman Estates* (1982), 110 Ill. App. 3d 974, 445 N.E.2d 247.) Further, if there is anything in the record which fairly supports the action of the agency, the decision is not against the manifest weight of the evidence and must be sustained on review. *Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 475 N.E.2d 956.

■■ Above all, in order to find that an agency's findings are

against the manifest weight of the evidence, it is necessary that an opposite conclusion be clearly evident from the proofs presented. (*United Air Lines, Inc. v. Illinois Fair Employment Practices Comm'n* (1979), 69 Ill. App. 3d 519, 387 N.E.2d 875; *Agans,* 142 Ill. App. 3d 1087, 492 N.E.2d 929.) "That an opposite conclusion might be reasonable or that the court might have reached a different conclusion is not adequate to set aside the agency's decision." (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653, 456 N.E.2d 998.) Our courts have their own and differing ways of stating the rule, but in principle they are unanimous in holding that in order to set aside the agency decision, the reviewing court must find that all "reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding would agree that the finding is erroneous." (*Agans,* 142 Ill. App. 3d at 1093.) The authorities have been most recently collected in *Agans* (142 Ill. App. 3d at 1093).

▪ Among the factors which the Secretary may consider in deciding whether to reinstate an applicant's driving privileges and which are pertinent to this case are the following: whether the applicant has driven while his license was suspended or revoked; number and severity of accidents; frequency, type and severity of traffic violations; efforts at rehabilitation or reform of past driving practices; demeanor of applicant at hearing; credibility of applicant and witnesses in hearing; credibility and weight of applicant's documents and evidence; and applicant's total driving record, including but not limited to reasons for violations. 92 Ill. Adm. Code 1001.430(b) (1985).

▪ Mindful of all the forgoing principles as guides, we have no difficulty in finding that the trial court erred in holding that the Secretary's determination was against the manifest weight of the evidence. To hold otherwise would be to reweigh the evidence and substitute our judgment for that of the Secretary, a procedure we plainly cannot indulge ourselves any more than the trial judge could appropriate the function to herself. We need not recapitulate the voluminous facts we have set forth at the beginning of this opinion. Suffice it for us to say here that plaintiff's dismal driving record and his failure to bear the burden of establishing his entitlement to a restoration of his driving privileges by clear and convincing evidence precludes not only our courts, but indeed, the administrative agency itself in this case from affording plaintiff any of the relief he seeks herein.

In *Cusak v. Edgar* (1985), 137 Ill. App. 3d 505, 484 N.E.2d 1145, the court noted that the plaintiff's seven traffic convictions in 10 years, including two DUI's, demonstrated his total disregard for traf-

fic laws and safety, and concluded that the plaintiff's driving record alone supported the Secretary's decision not to reinstate full driving privileges. In *Cusak* it was also held that where an alcohol assessment noted only one DUI arrest while the plaintiff in fact had two, and where the report further stated that the plaintiff regularly attended AA meetings, whereas plaintiff had in fact gone to only one, the Secretary's denial of an RDP would be upheld.

Plaintiff contends that the Secretary cannot deny reinstatement based solely on past conduct, citing *Shanahan v. Edgar* (1986), 149 Ill. App. 3d 868, 501 N.E.2d 197. But in *Shanahan,* the court invalidated the Secretary's rule calling for an automatic five-year ban on driving for persons convicted of more than one DUI, not because the court felt that past conduct cannot be considered a determinant in granting or denying reinstatement, but because the rule was held to be irredeemably in excess of the Secretary's authority. Moreover, here the Secretary did not rely solely upon plaintiff's past conduct in denying reinstatement, but, as the record recited hereinabove amply demonstrates, the Secretary had the benefit of three alcohol assessments and plaintiff's own testimony at the administrative hearing, at which, we are constrained to reiterate, plaintiff failed to sustain the burden that was incontestably his.

Plaintiff insists, however, that he has carried his burden of showing that he is a safe and responsible driver, noting that he successfully attended an ASEP course, two alcohol education courses and has attended 11 Alcoholics Anonymous meetings, besides submitting to three alcohol evaluations by clinics approved by the Secretary of State. Plaintiff further asserts that there is no evidence that he was to abstain from alcohol indefinitely, claiming that the conclusion by the hearing officer that plaintiff should continue AA meetings to help him abstain from the use of alcohol was in fact accomplished through his attendance at 11 meetings.

Plaintiff overlooks several important facts. He has been characterized by an alcohol assessor as a recovering alcoholic; he admits that he at least "was" an alcoholic, but acknowledges also that he still drinks, contrary to the recommendations of his 1983 alcohol assessor. Then, too, the record here is barren of any documented evidence of appropriate treatment for alcoholism. Although he attended 11 AA meetings in 1983, plaintiff has, by his own admission, yet to adhere to the AA program. He asserts that his "goal" is to stop drinking and, in an apparent effort to prove it, plaintiff testified that prior to his last arrest for DUI, he often drank to the point of intoxication; however, after his conviction of that offense in 1983, but before the 1985

hearing, he had cut down his drinking to a "couple of times a week," whereas he now has further reduced his drinking to "a few beers" on weekends. If plaintiff is attempting to demonstrate that the more time passes since his last AA meeting, the less alcohol he consumes, and therefore the less he needs outside help with his problem, we fail to be edified, and we can all the more easily understand why the Secretary remained unmoved. Plaintiff further explained at the administrative hearing that his attendance at the Alcohol Safety Education classes was because "one was required by the courts *** the other one I went through in order to try and get a restricted driving permit"—reasons which hardly inspire confidence in plaintiff's will to become a safe and responsible driver.

Plaintiff stresses that in his last two alcohol assessments he was classified as "non-problematic." Prescinding from the issue of whether the 1986 alcohol assessor was in possession of complete and accurate information necessary to his assessment, the Secretary cites this court's having addressed a similar situation in *Caracci v. Edgar* (1987), 160 Ill. App. 3d 892, 513 N.E.2d 932. In *Caracci*, the plaintiff had only one drunk driving conviction, and his alcohol assessment stated that he "was totally committed to a life of sobriety, had stopped drinking over one year earlier and did not have a problem with alcohol." But the Secretary "found that Caracci's past driving record documented a history of past alcohol abuse without documented evidence of appropriate treatment or abstinence." The court pointed out that the alcohol assessment was based largely on Caracci's testimony and that the Secretary could properly make his own findings concerning the credibility of a plaintiff's testimony.

In light of the foregoing, we are satisfied, contrary to the trial judge's holding, that the Secretary's decision not to reinstate plaintiff's license was well supported by the evidence.

■ The Secretary next argues that his decision to deny the plaintiff a restricted driving permit was not against the manifest weight of the evidence, pointing out that the legislature expressly granted him broad discretion in these cases. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—104; *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267.) The Secretary further states that he has discretion to issue RDPs only in cases where "undue hardship" will result. Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(c).

However, he maintains, the plaintiff in this case is not suffering undue hardship by his being without a driver's license, noting that plaintiff lives approximately six miles from his shop, that his mother drives him to and from work, and that he has a part-time employee

who test-drives the cars he repairs. Therefore, he concludes, in light of the fact that plaintiff failed to prove that he suffers any undue hardship as a result of his loss of driving privileges, considered with the risks to the public safety which plaintiff's driving poses, he was correct in his determination that plaintiff should be denied an RDP as well as full reinstatement of driving privileges.

Plaintiff claims substantial hardship, for without his license, he will not be able to continue in his business, that he had only temporary help to test-drive the cars after they were repaired, and that he cannot afford this help indefinitely.

We hold that the Secretary correctly denied plaintiff an RDP. Inconvenience is not undue hardship, nor is having to pay someone to test-drive cars. Plaintiff has not proved undue hardship as a result of his loss of driving privileges; accordingly, we uphold the Secretary's decision to deny him an RDP.

Accordingly, for the reasons expressed above, the judgment of the trial court is reversed.

Reversed.

HARTMAN and BILANDIC, JJ., concur.