MICHAEL H. CHRISTIANSEN, Plaintiff-Appellee and Cross-Appellant, v. JIM EDGAR, Secretary of State, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—90—0372

Opinion filed February 21, 1991.

37

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellant.

Brassfield, Cowan & Howard, of Rockford (David J. Brassfield, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, Michael H. Christiansen, petitioned the Secretary of State (Secretary) seeking full reinstatement of his driving privileges, or in the alternative, a restricted driving permit (RDP). The Secretary, upon the recommendation of the hearing officer, denied both the full reinstatement and the RDP. Upon administrative review, the circuit court of Sangamon County affirmed the Secretary's denial of full reinstatement, but reversed the denial of an RDP and ordered that such a permit be issued. Plaintiff appeals the denial of full reinstatement, while the Secretary appeals the issuance of the RDP. We affirm in part and reverse in part.

A review of plaintiff's driving record reveals the following convictions: (1) May 22, 1981, speeding too fast for conditions; (2) November 16, 1981, improper left turn with oncoming traffic (Wisconsin); (3) March 26, 1982, disregarding a stop or yield sign at an intersection; (4) March 22, 1982, reckless driving (Wisconsin); and (5) May 16, 1986, driving under the influence of alcohol (DUI). The reckless driving conviction was the result of a DUI arrest. As a result of the 1981 and 1982 convictions, pursuant to section 6—206(a)(2) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1981, ch. 95½, par. 6—206(a)(2)), plaintiff's driver's license was suspended for a period of 12 months by order entered March 23, 1982, and terminated June 28, 1983. Plaintiff was issued an RDP on July 8, 1982, which expired on June 28, 1983. Plaintiff was then arrested for DUI in 1986.

A statutory summary suspension was entered effective May 3, 1986, and an order revoking plaintiff's driver's license and driving privileges was entered effective June 10, 1986, pursuant to section 6—205(a)(2) of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(a)(2)). The driving privileges of plaintiff have not yet been restored, and plaintiff has not driven a motor vehicle since the entry of this order.

Plaintiff has undergone three separate alcohol-drug evaluations (evaluations) with three different classifications resulting. The first evaluation was conducted in April 1986 by Carol Ann Poshka, a certified addictions counselor at Treatment Alternatives to Street Crimes (TASC), which was required after his March 1986 DUI. Poshka classified plaintiff at Level III—alcoholism-chemical dependency. (See 92 Ill. Adm. Code §1001.410, at 3256 (Supp. 1987) (eff. March 18, 1986).) Poshka reported plaintiff was arrested in 1970 in Rock County, Wisconsin, for DUI and his license was suspended for 11 months thereafter. Poshka reported this information concerning an arrest in 1970 came from plaintiff. Plaintiff's possible arrest for DUI in 1970 is a disputed fact between the parties. A review of the certified copy of plaintiff's driving record dated June 21, 1988, reveals no arrest for DUI in 1970.

Poshka's recommendation was for residential treatment followed by aftercare, but plaintiff did not follow this recommendation. In April 1987, plaintiff voluntarily returned to TASC and was referred to AL-TECH, Inc., which recommended an alcohol intervention program (AIP). This program was designed for persons classified as Level II—problematic alcohol users. (See 92 Ill. Adm. Code §1001.410, at 3256 (Supp. 1987) (eff. March 18, 1986).) Plaintiff attended this out-patient program from April 7, 1987, through June 2, 1987. According to the discharge summary of the counselor at AIP, plaintiff's participation in the program was satisfactory. The counselor characterized the prognosis of plaintiff as "guarded" but supported his intentions to continue the abstinence from alcohol. At that time, plaintiff had been abstinent for approximately three months.

After successfully completing the AIP, plaintiff returned to TASC for an updated evaluation to use when seeking reinstatement of his driving privileges. The second evaluation was conducted by Raymond Johnson on July 2, 1987. Johnson classified plaintiff at Level I—nonproblematic use (see 92 Ill. Adm. Code §1001.410, at 3256 (Supp. 1987)) with no recommendation for further treatment, but he suggested a countermeasure of remedial alcohol and drug education (see 92 Ill. Adm. Code §1001.440(b)(1), at 3259 (Supp. 1987)). Johnson based his Level I classification on plaintiff's completing the AIP, plaintiff's reported and verified abstinence, plaintiff's positive attitude towards his abstinence and plaintiff's statement that he no longer had a need or desire for the use of alcohol. (See 92 Ill. Adm. Code §1001.440(d)(12), at 3260 (Supp. 1987).) Johnson also noted in his report that plaintiff had his driver's license suspended for an 11-month

period in 1970 for three moving violations or excessive points in one year which "may have been in part alcohol related."

In July 1987, approximately six days after the second evaluation, plaintiff applied for reinstatement of his driving privileges. An informal hearing was held, and on July 27, 1987, plaintiff's application was denied.

A little less than a year later, plaintiff returned to AL-TECH for yet a third alcohol-drug evaluation to utilize in another application for reinstatement of his driving privileges. Sandra Dorr conducted the evaluation and issued a report on February 26, 1988, which classified plaintiff at Level II—problematic use (abstinent) with no further recommendation for treatment. (See 92 Ill. Adm. Code §1001.410, at 3518 (Supp. 1988).) She did suggest a countermeasure of continued abstinence, outside support such as church or, at the very least, an outlet other than work. Dorr's evaluation was based on plaintiff's continued sobriety, successful completion of the AIP and a driver remedial course in Wisconsin, and his change in life-style. Dorr relied on the previous TASC evaluations in reaching her classification. Dorr noted that plaintiff had his license suspended in 1970 for moving violations.

On March 24, 1988, Dorr attached an addendum to her previous evaluation of plaintiff. In this addendum, Dorr explained her rationale for classifying plaintiff as a Level II (abstinent). She further explained that she classified plaintiff at Level II because he did not have more than one alcohol-related incident in the last five years, there were alcohol-related problems in only one significant life area, and he did not have a blood-alcohol content of .20 in any of the DUI arrests. She noted that although plaintiff was first classified at Level III (by Poshka), he was not ordered back to TASC for treatment. Subsequently, plaintiff was referred to a Level II program (AIP), which he completed and was thereafter classified as Level I (by Johnson). Dorr wrote that TASC was unable to explain why plaintiff was placed in a Level II out-patient program although he had previously been classified as Level III with a recommendation for residential treatment. Despite the confusion, Dorr did not change her classification of plaintiff as Level II (abstinent) and her recommendation remained the same. She also noted that the suggestion of an outside outlet was only meant for helpful advice and not as a formal recommendation.

In April 1988, plaintiff again applied for reinstatement of his driving privileges. On July 15, 1988, a formal hearing was held on plaintiff's application. At the time of the hearing, plaintiff was 38 years old, married, and had two dependent children. Plaintiff had been mar-

ried to Judy Christiansen, his current wife, for only two weeks. Plaintiff's current wife is a born-again Christian, does not consume alcohol, and does not allow alcohol to be brought into her home.

At the time of the hearing, plaintiff was employed by State Line Foundries in Roscoe, Illinois, and had been so employed for 18 years. He was an assistant to the president and supervised approximately 100 employees. Plaintiff's regular hours of employment were 5:30 a.m. to 3 p.m., Monday through Friday. However, plaintiff was on call 24 hours a day and testified that on many occasions he worked on Saturday and Sunday.

Plaintiff stated that he lived 10 miles from his place of employment but on occasion is required to travel a distance of up to 25 miles from his place of employment for employment-related business. Plaintiff received rides to and from work with his former brother-in-law, a fellow employee. Another co-worker provided plaintiff with transportation for any other employment-related driving. Plaintiff's former brother-in-law is paid by State Line Foundries for any overtime caused by having to drive plaintiff, and he is also paid weekly by plaintiff.

Plaintiff testified that he had been abstinent since March 1987 and had no desire to return to drinking. He stated he no longer socializes with his "drinking buddies," and he expressed a desire to begin attending church as an outside support group. Plaintiff stated he had attended three Alcohol Anonymous meetings while in the AIP, but was not sure if he would attend any more if his driving privileges were reinstated.

The hearing officer found the most recent alcohol-drug evaluation classified plaintiff as Level II (abstinent). (See 92 Ill. Adm. Code §1001.410, at 3518 (Supp. 1988).) The hearing officer noted plaintiff has a history of problematic use of alcohol and was previously classified as Level III—problematic-use, dependent. Finally, the hearing officer found that plaintiff had successfully completed an alcohol-intervention program, had not consumed alcohol since March 1987, and did not plan to drink alcohol in the future.

The hearing officer concluded plaintiff failed to meet his burden of proof that his alcohol-drug problem had been resolved. The hearing officer concluded the present alcohol evaluation is questionable because the evaluator did not have knowledge of plaintiff's "three DUI arrests." The hearing officer also concluded there were reasonable alternative means of transportation available to plaintiff other than driving himself to work. Finally, the hearing officer concluded plaintiff did not establish that he would be a safe and responsible driver and

that he would not endanger the public safety and welfare. The hearing officer recommended that full reinstatement of driving privileges and the RDP should be denied.

On September 16, 1988, the Secretary adopted the recommendations, findings of fact, and conclusions of law of the hearing officer. On October 3, 1988, plaintiff filed a complaint seeking administrative review. On May 14, 1990, a written order was entered affirming the denial of full reinstatement but reversing the denial of the RDP.

■■■ The Administrative Review Law provides that the findings and conclusions of an administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) A court may not overturn the decision of an administrative body unless the authority of the administrative body was exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) A reviewing court is not to reweigh the evidence or make an independent review of the facts; rather, its sole function is to ascertain whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. (*Berry v. Edgar* (1989), 192 Ill. App. 3d 455, 548 N.E.2d 575.) If there is anything in the record which fairly supports the agency's decision, such decision is not against the manifest weight of the evidence and must be sustained upon review. (*Berry*, 192 Ill. App. 3d at 459, 548 N.E.2d at 578.) Thus, in order for the circuit court to find the Secretary's decision was against the manifest weight of the evidence, it must have determined, after viewing the evidence in the light most favorable to the Secretary, that no rational trier of fact could have agreed with the Secretary's decision. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929.

### I. DENIAL OF FULL REINSTATEMENT
■■■ Plaintiff contends the Secretary's decision to deny him full reinstatement of his driving privileges is against the manifest weight of the evidence. Section 6—208(b) of the Code provides for application for full reinstatement of driving privileges after these privileges have been revoked. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—208(b).) In addition, the Secretary has promulgated regulations which set forth the requirements for full reinstatement as well as for issuance of an RDP. (See 92 Ill. Adm. Code §1001.400 *et seq.* (Supp. 1988).) In order to be granted any driving privileges, if the loss of driving privileges was alcohol related, an applicant must prove that he does not have a current problem with alcohol or other drugs, that he is a low or minimal risk

to repeat his past abusive behavior and operate a motor vehicle while under the influence of alcohol or other drugs, and that he has complied with all other standards as specified in the regulations. (See 92 Ill. Adm. Code §1001.440(b), at 3521 (Supp. 1988).) Furthermore, an applicant must prove the reinstatement of his driving privileges will not endanger the public safety and welfare. (See 92 Ill. Adm. Code §1001.420(e), at 3519 (Supp. 1988) (issuance of RDP); §1001.430(c), at 3520 (Supp. 1988) (reinstatement after revocation).) The total driving record of the applicant, as well as any alcohol-drug evaluations provided by the applicant, may be used in making this determination. (See 92 Ill. Adm. Code §§1001.420(d), 1001.430(b) (Supp. 1988).) However, these evaluations are not dispositive of the issue and are not the sole factor to be considered. *Berry*, 192 Ill. App. 3d at 460, 548 N.E.2d at 578; see, *e.g.*, 12 Ill. Adm. Code §1001.440(d), at 3522 (Supp. 1988) (lists evidence which shall be considered in determining whether applicant met his burden of proof and, in particular, has overcome presumption of current alcohol-drug problem).

Plaintiff contends that his second and third alcohol evaluations establish that he has resolved his alcohol problem and, therefore, the full reinstatement of his driving privileges will not endanger the public safety and welfare. The Secretary contends these evaluations are questionable because the evaluators did not have complete knowledge of the plaintiff's driving record.

Great emphasis is placed in the briefs of the parties on whether the plaintiff was arrested for DUI in 1970 in Wisconsin. Plaintiff contends he was not arrested for DUI in 1970, but rather, had his license suspended for an 11-month period due to three moving violations or excessive points in one year. The Secretary, on the other hand, contends it was entitled to conclude reliable evidence supported a finding that plaintiff was arrested in 1970 for DUI, *i.e.*, based on statements made to the first evaluator, Poshka.

Plaintiff argues, assuming that there was a 1970 arrest for DUI, since it would have occurred 18 years prior to the formal hearing, it would not be relevant. Plaintiff relies on this court's decision in *Britt v. Edgar* (1989), 192 Ill. App. 3d 469, 548 N.E.2d 826, for support. In *Britt*, the plaintiff, in the 10 years prior to his hearing, had been convicted of speeding and DUI. In response to this driving record, this court stated:

> "We recognize the Secretary, per his regulations, considers the applicant's total driving record in deciding whether to issue an RDP. (92 Ill. Adm. Code §1001.420(d), at 3519 (Supp. 1988).) However, at some point in time the relative weight of the prior

offenses decreases and may no longer justify a finding that restoration of an applicant's driving privileges will cause harm to public safety and welfare. At some point, even a felon's background convictions become inadmissible. (Compare, *e.g.*, *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, as discussed in *Fitzpatrick v. Edgar* (1987), 158 Ill. App. 3d 966, 512 N.E.2d 56 (McCullough, J., dissenting).)" (*Britt*, 192 Ill. App. 3d at 474, 548 N.E.2d at 829-30.)

Plaintiff contends, based on the above language, that the 1970 arrest is so remote in time that it was error for the hearing officer to question the second and third evaluations for lack of knowledge of this arrest.

■ We find *Britt* distinguishable. In *Britt*, we held that the offenses occurring 10 years prior to the hearing were not as relevant in determining that the issuance of an RDP would constitute a present danger to public safety and welfare. On the contrary, the hearing officer in this case used the offense occurring 18 years prior to the hearing to question the *classification* of the plaintiff as determined by the alcohol evaluations. The classifications are important because they determine what an applicant must prove to be qualified for restoration of any form of driving privileges. Different classification levels have different requirements. (See, *e.g.*, 92 Ill. Adm. Code §§1001.440(b), (e), at 3521-22 (Supp. 1988).) Therefore, arrests occurring many years prior to the hearing may be relevant to determine the level of classification of alcohol dependency (see 92 Ill. Adm. Code §1001.440(c), at 3522 (Supp. 1988)) and also in evaluating whether an applicant has met his burden of proof (see 92 Ill. Adm. Code §1001.440(d), at 3522 (Supp. 1988).

■ Plaintiff contends that this 1970 arrest was not a DUI, but he offered no evidence in the administrative proceeding to that effect other than his own statement. Indeed, on cross-examination about a 1970 incident, plaintiff testified he had been involved in an accident in Wisconsin in 1970 and had been drinking prior to the accident, but said he was not arrested for DUI. It is quite possible that had plaintiff offered some independent evidence as to the exact nature of this 1970 offense, the hearing officer would not have questioned the validity of the second and third evaluations. However, as no such evidence was presented, the hearing officer was justified in questioning the second and third evaluations and, thus, concluding that plaintiff had not met his burden of proof that he would not endanger the public safety and welfare.

Plaintiff's next argument is that the hearing officer failed to consider all of the factors listed in the regulations when making a determination that plaintiff does not have a current drinking problem and that he is at a minimal risk to repeat his past behaviors and the operation of a motor vehicle while under the influence of alcohol. Specifically, plaintiff cites section 1001.440(d) of title 92 of the Illinois Administrative Code (92 Ill. Adm. Code §1001.440(d), at 3522 (Supp. 1988)), which lists the factors that may be presented as evidence that the applicant has met his burden of proof and, in particular, has overcome the presumption of a current alcohol-drug problem. These factors include such items as the age of the applicant, the applicant's total driving record, similarity of circumstances between DUI arrests, and changes in life-style by the applicant since his latest DUI arrest.

The Secretary responds that it is not required to mechanically apply each and every factor listed in that section but, rather, should use these factors as a guideline when making a determination. We agree.

■ The hearing officer is required to consider all the evidence presented and the applicant's entire driving record when making a decision. However, the hearing officer is allowed to, and, as the trier of fact, must make determinations as to the credibility of witnesses, the admissibility of evidence, and the weight to be accorded each piece of evidence. Simply because the hearing officer did not list a specific factor in his findings of fact or conclusions of law does not mean he did not consider that factor. Therefore, we reject plaintiff's argument that the hearing officer erred because he failed to list every factor enumerated in the regulations in his decision.

The Secretary argues that for restoration of any driving privileges, if an applicant has been classified as Level III—problematic use, dependent, he "must document compliance with all treatment recommendations of his/her evaluator and must prove that he/she has established an ongoing support/recovery program." 92 Ill. Adm. Code §1001.440(b)(3), at 3259 (Supp. 1987).

The Secretary contends that plaintiff has not complied with all the treatment recommendations of his evaluator according to the first evaluation in 1986 and that plaintiff has not established an ongoing support-recovery program. "Support-recovery program" has been defined to mean:

"[S]pecific activities which a recovering alcoholic/chemically dependent person has incorporated into his/her lifestyle to help support his/her continued abstinence from alcohol and other drugs. Such a program may include, but is not limited to, self-help program participation, professional counseling, religious

involvement, and support provided by engaging in free-time, recreational activities in social organizations or with friends and significant others." 92 Ill. Adm. Code §1001.410, at 3518-19 (Supp. 1988).

■ Plaintiff has failed to comply with the necessary requirements set forth in the regulations for an applicant classified as a Level III—alcohol-dependent user. Plaintiff's completion of the AIP, a Level II program, is insufficient to demonstrate compliance with the treatment recommendations of his first evaluation, which put him at Level III—alcohol dependent. Plaintiff must complete a Level III residential program followed by aftercare in order to demonstrate compliance with the recommendations of his first evaluation. Plaintiff has failed to prove that he has established a support-recovery program. Plaintiff's statement that he would consider starting to attend church is insufficient to demonstrate that he has established a support-recovery program. Therefore, since plaintiff has not shown compliance with the regulations, the denial of full reinstatement of driving privileges was not against the manifest weight of the evidence.

■ This does not mean that an applicant who has had more than one evaluation and those evaluations have different conclusions must demonstrate compliance with the regulations for each level at which the applicant was classified. We do not hold that once an applicant has been classified at a certain level, he may never be reclassified at a different level. Indeed, as in this case, events subsequent to the first evaluation may indicate a change in the applicant's level of alcohol dependency. We note that in this case, since the hearing officer questioned the reliability of the second and third evaluations and thus relied primarily on the first evaluation to conclude plaintiff had not met his burden that he had resolved his alcohol problem, the hearing officer could rely on the fact that plaintiff had not complied with the regulations for an applicant placed at Level III to draw this conclusion.

Plaintiff is not precluded from presenting for future evaluations and in proceedings on any future application for restoration of driving privileges additional independent evidence on the exact nature of his arrest in 1970 in Rock County, Wisconsin. The Secretary may deem such evidence, along with evidence of continued abstinence, sufficient to sustain plaintiff's burden in such proceedings, though the Secretary is not of course required to reach that conclusion.

## II. DENIAL OF RDP

The Secretary appeals that portion of the circuit court's order which reversed the denial of an RDP. The Secretary contends that the

decision of the Secretary to deny the RDP was not against the manifest weight of the evidence.

■■ The law in Illinois is clear that once a person's driving privileges have been revoked, the restoration of these privileges is not automatic. (*Agans*, 142 Ill. App. 3d 1087, 492 N.E.2d 929.) Section 6—205(c) of the Code provides:

> "[T]he Secretary of State in his discretion, without regard to whether such recommendation is made by the court, may, if application is made therefor, issue to such person a restricted driving permit granting the privilege of driving a motor vehicle between the petitioner's residence and petitioner's place of employment [or within other specified limits], if the petitioner is able to demonstrate that no alternative means of transportation is reasonably available and the petitioner will not endanger the public safety or welfare; provided that the Secretary's discretion shall be limited to cases where undue hardship would result from a failure to issue such restricted driving permit." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(c).)

Thus, the factors in determining whether to issue an RDP are the degree of hardship which deprivation of driving privileges imposes upon the applicant, whether alternative means of transportation are available, and whether issuance of the permit would prove a danger to public safety and welfare. *Britt*, 192 Ill. App. 3d 469, 548 N.E.2d 826.

"Undue hardship" is defined in the regulations as: "[A]n extreme difficulty in regard to getting to or from an Applicant's place of employment or to operate on a route during employment *** because of the suspension, revocation, or cancellation of the Applicant's driving privileges. It is more than mere inconvenience on the Applicant ***." (92 Ill. Adm. Code §1001.410, at 3519 (Supp. 1988).) The evidence established that plaintiff lived approximately 10 miles from his place of employment and is required to drive up to 25 miles away from his place of employment on employment-related business. Plaintiff received rides to and from work from a co-worker and plaintiff's employer provided a driver when plaintiff needed to travel away from the foundry on work-related business. There is no indication whatsoever that, if plaintiff's driving privileges are not reinstated, he will lose his job. On the contrary, it appears that State Line Foundries has accommodated plaintiff in providing this service.

■■ Therefore, since there are reasonable alternative means of transportation, plaintiff has failed to prove that undue hardship will result if he is denied an RDP. Since plaintiff has not proved undue

hardship, the decision of the Secretary in denying his application for an RDP was not against the manifest weight of the evidence.

In conclusion, we find that the decision of the Secretary in denying plaintiff full reinstatement, or in the alternative, an RDP, was not against the manifest weight of the evidence. We affirm that part of the circuit court's order affirming the Secretary's denial of full reinstatement and reverse that part of the circuit court's order reversing the Secretary's denial of an RDP.

Affirmed in part, and reversed in part; and Secretary's order reinstated.

GREEN and STEIGMANN, JJ., concur.