MARK K. GRAMS, Plaintiff-Appellee, v. GEORGE H. RYAN, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—93—0697

Opinion filed June 23, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellant.

William A. Pryor, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The Secretary of State (Secretary) appeals from the order of the circuit court of Sangamon County reversing its denial of Mark Grams' petition for reinstatement of his driving privileges or a restricted driving permit (RDP). The Secretary contends the circuit court erred in finding its determination to be manifestly erroneous. We agree and reverse.

## I. BACKGROUND

Grams was arrested for speeding on April 19, 1990. (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 11—601.) He was convicted of this offense on May 22, 1990. He was arrested a second time for speeding on August 10, 1990, and convicted on September 11, 1990. On November 17, 1990, he was arrested for illegal transportation of alcohol. (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 11—502.) He was convicted of this offense on November 19, 1990. On December 11, 1990, Grams was arrested for driving under the influence of alcohol (DUI). (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(2).) He submitted to a breathalyzer test which revealed a blood-alcohol content (BAC) of .26%. Grams was convicted of DUI on May 29, 1991.

On January 27, 1991, Grams' driving privileges were suspended for three months as the result of his arrest for DUI and submission to breathalyzer test which revealed a BAC in excess of .10%. (Ill.

Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 6—208.1(a)(2).) On February 26, 1991, an additional suspension of driving privileges was imposed; Grams' driving privileges were suspended for six months as the result of having three or more convictions of moving violations in a 12-month period. (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 6—206(a)(2).) On June 20, 1991, Grams' driving privileges were revoked as the result of his conviction of DUI. Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(g).

Grams obtained an alcohol evaluation from the Human Resources Center (HRC). (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(e).) Ten hours of remedial education and 17 hours of counseling were recommended. Grams completed the remedial education and counseling in January 1992.

On March 12, 1992, Grams applied for reinstatement of his driving privileges or, in the alternative, an RDP. On March 30, 1992, the Secretary denied Grams' request. The Secretary noted the amount of alcohol Grams acknowledged consuming on the night of his DUI arrest was inconsistent with his BAC of .26%. The BAC also suggested a greater tolerance than would normally be expected based upon Grams' reported history of alcohol use. The Secretary suggested Grams obtain assistance from his treatment facility in resolving these issues.

On April 8, 1992, Karen K. Kelley, a substance abuse counselor at the HRC, wrote a letter to the Secretary noting she was aware of the discrepancy between Grams' BAC of .26% and his reported alcohol consumption; however, she found during the course of treatment Grams remained "consistent and reliable with his reported history." Kelley's recommendation was that "no further treatment is necessary at this time."

Grams filed a second request for driving privileges on May 1, 1992. On June 8, 1992, the Secretary informed Grams his request had been denied. The Secretary explained Grams' BAC level of .26% and classification as "Level II, Problematic Use, Moderate Risk" (see 92 Ill. Adm. Code § 1001.410 (1991)) is inconsistent with his representations he never had problems with alcohol.

## II. THE ADMINISTRATIVE HEARING AND CIRCUIT COURT'S REVIEW

Grams requested a formal hearing (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 2—118), which was held on September 3, 1992. At the hearing, Grams' driving record, as set forth above, was read into the record. The evaluations and other material documenting Grams' remedial education and counseling were admitted into evidence. According to the evaluations, Grams was classified as a "Level Two, Problematic

Use, Moderate Risk," as the result of his BAC on the night of his arrest. According to the information Grams supplied to the evaluator, prior to his arrest for DUI, Grams drank six alcoholic beverages, once a week. After his arrest for DUI, he reduced his consumption to one or two alcoholic beverages no more than once a month. Grams' wife, who was interviewed in April 1991, told the evaluator that during the two years she had known Grams, he drank one or two alcoholic beverages on one or two occasions per month. She reported she had known Grams to drink a six-pack of beer, but this was rare.

Grams testified he pleaded guilty to DUI in May 1991; two other charges, the nature of which do not appear in this record, were dismissed at that time. A conviction of DUI was entered, and Grams was ordered to pay a fine and attend remedial education. Grams testified he completed the remedial education and counseling. Grams testified he obtained an alcohol evaluation. His Mortimer Filkins test score initially indicated he was not a "Level II," but his BAC of .26% on the night of his DUI arrest elevated him to a "Level II." His updated evaluation, performed one week prior to the hearing, also classified him as a "Level II." Grams testified he agreed with the "Level II" classification, but stated he never had an alcohol problem and had never abused alcohol. He testified the evaluator did not, at any time, indicate he should change his drinking pattern or use of alcohol.

Grams testified his pattern of alcohol use changed as the result of his DUI arrest. Grams classified his current use as "minimal." He testified he consumed "a couple" drinks twice per month. When asked to define "a couple," he stated, "I would say maximum, five or six; minimum, one." Grams testified the last time he was intoxicated was on his wedding night, which was July 4, 1992. He then stated "I wasn't intoxicated, but I had you know—" and testified he had two glasses of wine and four beers.

Regarding the night of his DUI arrest, Grams testified he consumed five beers during a one-hour period. After driving 10 miles, he was stopped because he crossed the center line. Grams acknowledged he was impaired and should not have been driving, but stated he did not consume the 10 or 12 drinks his BAC indicated he had consumed.

Regarding his arrest for illegal transportation of alcohol, Grams testified he was moving to a new residence. He and his friends drank some beer while they were loading the car. One of his friends put the empty cans back in the cooler and put the cooler in the backseat of the car. He was stopped for having an obstructed view and ticketed for illegal transportation of alcohol as the result of the empty cans in the car.

Grams testified his current pattern of alcohol use was the same as his pattern of alcohol use prior to being arrested for DUI. He also stated, "I've never been a heavy drinker. It's always, I've always been a light drinker." Grams testified he has never passed out due to alcohol. When asked if he had ever blacked out due to alcohol, he initially said "no," but then explained "[w]ell, now in those classes we had, I said I had blackouts. But the way they went about it, they described it like forgetting something, and now I'm getting the impression that blackout is like you lose consciousness, and I've never—" When asked by the hearing officer to explain what a "blackout" was, Grams stated:

"Well, during my classes they asked us, and the way they explained it to me, I said yes, I had to have blackouts years go when I was, I was a kid. They explained it to me as a loss of memory, you know, forgetting what you'd done the night before when you'd been out drinking, and I said yes to that. Now I'm coming back and I guess with the impression that a blackout is like you passout, and I've never passed out from alcohol."

The hearing officer made several findings, including the following: (1) the evidence submitted at the hearing supported Grams' classification as a Level II, Problematic Use, Moderate Risk, (2) evidence of Grams' alcohol use was not consistent with the history he reported to the evaluator, (3) Grams has experienced a blackout and loss of control, which are symptoms of alcohol abuse/dependence, (4) Grams denies having an alcohol problem, (5) Grams' current alcohol use consists of one to six beers two times per month, and Grams intends to maintain this alcohol use.

The hearing officer noted Grams' BAC at the time of the arrest is inconsistent with the amount of alcohol Grams acknowledges consuming, and indicates a greater tolerance to alcohol than would normally be expected given his reported drinking history, citing J. Kinney & G. Leton, *Loosening the Grip: A Handbook of Alcohol Information* 31-45 (3d ed. 1987), and *Encyclopedic Handbook of Alcoholism* 65-66, 359-60 (Pattison & Kaufman ed. 1982). Finally, the hearing officer found, under the rules of the Illinois Department of Alcoholism and Substance Abuse, a BAC of .26% in itself indicates an alcohol problem. (77 Ill. Adm. Code § 2056.310(b) (1991).) The hearing officer found the information in the treatment discharge does not satisfy the Secretary of State's rules. 92 Ill. Adm. Code § 1001.440(i) (1991).

The hearing officer concluded there were significant conflicts and discrepancies in the evidence regarding Grams' alcohol usage. The hearing officer noted that even if the .26% BAC was not accurate,

other discrepancies, such as blackouts and loss of control, suggest abusive drinking at some point in Grams' life, and Grams' denial of an alcohol problem is, therefore, troublesome. The hearing officer found that, while Grams' credibility was enhanced by his candor in admitting he continues to use alcohol, "there are too many unanswered questions to grant full driving relief."

The hearing officer's conclusions of law were as follows: (1) the evidence established Grams has abused alcohol, and this abuse has caused specific identifiable problems; (2) Grams failed to provide sufficient evidence to meet his burden of proving his alcohol problem has been resolved; and (3) given the unresolved issue, Grams failed to prove he would be a safe and responsible driver and that he would not endanger the public safety and welfare. The hearing officer recommended a denial of Grams' petition. On September 30, 1992, the Secretary entered an order adopting the recommendations of the hearing officer and denying Grams' petition.

On October 28, 1992, Grams filed a complaint for administrative review in the circuit court of Sangamon County, alleging the decision issued by the hearing officer "is not in accordance with the law," and the decision denying the RDP and reinstatement of full driving privileges "is a clear abuse of discretion and contrary to the manifest weight of the evidence." He further alleged the hearing officer's "findings of the Petitioner had no viable support system was contrary to the evidence."

On February 24, 1993, after hearing arguments of counsel and reviewing the briefs submitted, the circuit court entered an order finding, with no explanation or analysis, "[t]he Secretary's findings are against the manifest weight of the evidence." The Secretary appeals this determination.

## III. ANALYSIS

■ Driving a motor vehicle on the public roads is a privilege and not a right. Those who abuse this privilege by demonstrating an inability or unwillingness to exercise it responsibly, with proper regard for the public safety and welfare, will have this privilege revoked. Once driving privileges are revoked, their restoration is not automatic. (*Berry v. Edgar* (1989), 192 Ill. App. 3d 455, 458, 548 N.E.2d 575, 577.) The public interest in curbing the epidemic number of deaths and injuries attributable to drunk driving by keeping unsafe drivers off the streets outweighs the interests of convicted drunk drivers in regaining their driving privileges. *Koeck v. Edgar* (1989), 180 Ill. App. 3d 332, 337, 535 N.E.2d 1019, 1022.

■ The Secretary shall not reinstate full driving privileges until

satisfied the granting of the privilege will not endanger the public safety or welfare. (Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 6—208(b).) The same is required for the issuance of a RDP; however, there the petitioner must also demonstrate hardship. (*Berry*, 192 Ill. App. 3d at 458, 548 N.E.2d at 577; Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 6—206(c)(3).) The Secretary has promulgated regulations which set forth the requirements which must be fulfilled prior to reinstatement of driving privileges, or the issuance of a RDP. *Christiansen v. Edgar* (1991), 209 Ill. App. 3d 36, 43, 567 N.E.2d 696, 701; 92 Ill. Adm. Code § 1001.400 *et seq.* (1991).

■ In order to be granted any driving privileges, if the loss of driving privileges was alcohol related, the petitioner must prove he does not have a current problem with alcohol, he is a low or minimal risk to repeat past abusive behavior and operate a motor vehicle while under the influence of alcohol, he has complied with all other standards as specified in the regulations, and the granting of driving privileges will not endanger public safety or welfare. (*Christiansen*, 209 Ill. App. 3d at 43-44, 567 N.E.2d at 701; 92 Ill. Adm. Code §§ 1001.440(b), 1001.420(e), 1001.430(c) (1991).) The Secretary shall not issue a license or permit to any person, as a driver, who is a user of alcohol or any other drug to a degree which renders such a person incapable of safely driving a motor vehicle. Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 6—103(4).

■ The petitioner bears the burden of proving, by clear and convincing evidence, that he is entitled to be granted driving privileges. (*Berry*, 192 Ill. App. 3d at 458, 548 N.E.2d at 577.) In determining whether he has met this burden, the hearing officer may consider various factors, including (1) frequency, type and severity of traffic violations, (2) efforts at rehabilitation or reform of past driving practices, (3) demeanor of the petitioner at the hearing, (4) credibility of the petitioner at the hearing, (5) credibility and weight of petitioner's documentary evidence, and (6) the petitioner's total driving record. (92 Ill. Adm. Code §§ 1001.420(d), 1001.430(c) (1991).) The findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. A court may not overturn the decision of an administrative body unless the authority of the administrative body was exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. If there is anything in the record which fairly supports the agency's decision, such decision is not against the manifest weight of the evidence and must be sustained on review. *Christiansen*, 209 Ill. App. 3d at 43, 567 N.E.2d at 700.

■ Thus, in order for the circuit court to find the Secretary's

findings were against the manifest weight of the evidence, it must have determined no rational trier of fact could have reached the same conclusions. We are unable to agree with such a determination. Rather, we agree with the Secretary that there are numerous inconsistencies regarding Grams' alcohol usage. As the Secretary noted, Grams' reported usage of alcohol is inconsistent with his BAC, level of tolerance, blackouts, and loss of control. Moreover, at the hearing, Grams testified both that his pattern of drinking *had* and *had not* changed since his arrest for DUI. His admission at the hearing that he drinks up to six alcoholic beverages twice a month is inconsistent with his report to the HRC he drinks only one or two alcoholic beverages once a month. His statement that before his arrest for DUI he regularly drank six alcoholic beverages once a week is inconsistent with his wife's statement to the HRC that during the time she has known Grams, his pattern was to drink one or two alcoholic beverages on a given occasion, and his consumption of six alcoholic beverages was "rare."

These inconsistencies could reasonably have led the hearing officer to conclude Grams has been less than straightforward about his alcohol usage. The hearing officer, who had the opportunity to observe Grams and listen to his testimony, is in the best position to assess his credibility and weigh the effect of these inconsistencies. Due to questions regarding whether Grams has minimized his alcohol usage and failed to acknowledge and address his actual alcohol usage, it is reasonable to find Grams did not prove, by clear and convincing evidence, his burden of proving his alcohol problem has been resolved, and, given the unresolved issue, Grams failed to prove he would be a safe and responsible driver and that he would not endanger the public safety and welfare.

Grams attempts to defend the circuit court's ruling, contending he proved he would not endanger public safety and welfare. To support his position, Grams relies heavily on his driving record and distinguishes it from less impressive driving records in other cases. See *Koeck*, 180 Ill. App. 3d 332, 535 N.E.2d 1019; *Hannay v. Edgar* (1988), 175 Ill. App. 3d 559, 529 N.E.2d 1101.

Koeck was convicted of nine traffic offenses, at least one of which was alcohol related. (*Koeck*, 180 Ill. App. 3d at 334-35, 535 N.E.2d at 1020-21.) Hannay was convicted of seven traffic offenses: twice of DUI and four times of driving while his license was revoked. (*Hannay*, 175 Ill. App. 3d at 560-61, 529 N.E.2d at 1102.) In both cases, on review, the appellate court reversed the circuit court's reversal of the Secretary's denial of reinstatement of driving privileges. (*Koeck*, 180 Ill. App. 3d at 338, 535 N.E.2d at 1024; *Hannay*, 175 Ill. App. 3d at 563-

64, 529 N.E.2d at 1103-04.) In *Koeck*, the reason for the reversal was Koeck's dismal driving record and Koeck's continued usage of alcohol despite his classification as, and admission that he was, an alcoholic. (*Koeck*, 180 Ill. App. 3d at 338-39, 535 N.E.2d at 1023-24.) In *Hannay*, the reversal was predicated upon (1) Hannay's repeated disregard for the traffic laws by driving while his license was revoked, (2) the lack of change in his drinking habits, and (3) inconsistencies between his testimony and his statements to his counselor regarding his alcohol usage. The court also noted the Secretary could consider Hannay's increased tolerance of alcohol and blackouts. *Hannay*, 175 Ill. App. 3d at 563, 529 N.E.2d at 1103.

Although it is true Grams' driving record is less egregious than those of Koeck and Hannay, Grams has been convicted of four offenses, two of which were alcohol related. Moreover, all of Grams' offenses were committed during an eight-month period, during the last year he held his license. No explanation for this escalation was given.

More important, although the petitioner's driving record is a factor to be considered by the Secretary, it is not the only factor. Rather, the Secretary should consider the petitioner's acknowledgement and resolution of alcohol usage issues. Although the present case differs from *Koeck* and *Hannay* with respect to the number of traffic convictions, it is similar to both cases with respect to the concerns regarding whether the petitioners had resolved their alcohol usage issues. This similarity is significant because the Secretary did not deny Grams' request for reinstatement as the result of an egregious driving record, but because the inconsistencies regarding Grams' alcohol usage indicate unacknowledged and unresolved alcohol usage issues. Since Grams did not meet his burden of proving resolution of these issues, the Secretary's denial of his petition for reinstatement of driving privileges was proper.

Finally, we note our review would have been facilitated by an explanation and analysis on the part of the circuit court to illuminate its determination that "[t]he Secretary's findings are against the manifest weight of the evidence." Had the record not provided a clear basis for reversing the circuit court, we would likely have reversed and remanded with directions that the circuit court explain the basis for its holding. See *Stewart v. Ryan* (1992), 229 Ill. App. 3d 912, 916-17, 595 N.E.2d 234, 237.

For the reasons stated, the judgment of the circuit court of Sangamon County is reversed.

Reversed.

COOK and STEIGMANN, JJ., concur.